**FEDERAL KEMPER INS. CO.**

**v.**

**P.M. YACOMES, Sr., et al.**

**Civ. A. No. 83–3208.**

United States District Court,
E.D. Pennsylvania.

July 15, 1986.

Harvey Freedenberg, Alan R. Boynton, Jr., Harrisburg, Pa., for plaintiff.

Richard Long, Damon B'Ambrosio, Bradley E. Miller, Lawrence Devechio, Reading, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The above captioned action arises out of an automobile accident which occurred on February 26, 1982. On that date, an automobile operated by Peter M. Yacomes, Jr., collided with an automobile driven by Samuel J. Yeich. In addition to the operator of the Yacomes vehicle, the Yacomes car contained five (5) passengers: Pamela E. Greenwood, Thea E. Sheidy, Andrew C. Lengel, David J. Beck and Stephanie Yacomes. The occupants of the Yacomes vehicle were all minors. Samuel J. Yeich was the sole occupant of the car he operated. As a result of the collision, Pamela E. Greenwood, Thea E. Sheidy and Andrew C. Lengel were killed. Stephanie Yacomes, Peter Yacomes, Jr., David Beck and Samuel Yeich sustained personal injuries.

Following the accident, five (5) civil actions were commenced in the Court of Common Pleas of Berks County. Samuel Yeich and his wife initiated suit against Peter Yacomes, Jr., and Peter Yacomes, Sr., individually and t/d/b/a Pete Yacomes Chevron and/or Pete's Chevron. Actions were brought against both Yacomeses and Samuel Yeich by four (4) of the five (5) passengers in the Yacomes vehicle, either in their own right or on behalf of their estates. These actions have since been settled and discontinued pursuant to a number of releases, the terms of which shall be discussed hereinafter.

At the time of the accident, Peter Yacomes, Sr., was the named insured of four (4) insurance policies he had purchased from Federal Kemper Insurance Company. Policy No. R942898 is described as a "personal automobile insurance policy". Policy No. TOR98569 is described as a "garage liability policy". Policy No. RY940233 is described as a "commercial automobile insurance policy". Policy No. UF369880 is described as a "homeowners insurance policy". The car which was operated by Peter Yacomes, Jr., a 1971 Chevrolet Monte Carlo, was "listed" as an insured vehicle under the personal automobile insurance policy.

Pursuant to its duty to defend the Yacomeses in the state court actions under the personal automobile policy, Federal Kemper investigated the case, retained counsel and otherwise provided a defense prior to settlement. The state court actions were thereafter settled according to the terms of the aforementioned releases. In consideration for the release of its insureds, Federal Kemper tendered the policy limits of the personal automobile policy, i.e., $300,000.00. The releases provided that the five (5) plaintiffs in the state court actions specifically reserved their rights to proceed against any coverage which might be provided by the commercial automobile, garage liability or homeowners policies and, in this sense, the releases were conditional.

Federal Kemper had, in fact, prior to the execution of these releases, commenced this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that it has no duty to defend or indemnify Peter Yacomes, Sr., Peter Yacomes, Jr., or Sally Yacomes under the commercial automobile, garage liability or homeowners policies described above with regard to the injuries and deaths resulting from said automobile accident. The named defendants in this declaratory judgment action are: (1) Peter Yacomes, Sr., Peter Yacomes, Jr., and Sally Yacomes; (2) the named plaintiffs in the state court civil actions, Samuel and Alma Yeich, David J. Beck, Pamela E. Greenwood, Andrew C. Lengel and Stephanie Yacomes; and (3) Thea E. Sheidy, a passenger in the Yacomes vehicle, who was killed, but on whose behalf no state court civil action had been commenced at the time this suit was filed.

The matter was tried before this Court on May 7, 1986. The only factual dispute between the plaintiff and the defendants pertained to the nature and extent of communications between Peter Yacomes, Sr., and Michael Sisk, Federal Kemper's agent from whom Yacomes obtained his insurance. While Federal Kemper was the named plaintiff in this action, the parties properly proceeded on the premise that the

defendants bore the burden of proof since it was their contention that additional coverage was provided by the commercial automobile policy and the garage liability policy.[1]

The defendants do not dispute that, under the clear and unambiguous language of the commercial automobile and garage liability policies, Federal Kemper has no duty to defend or indemnify the Yacomeses. Rather, the defendants argue that this Court should reform the terms of these policies so as to, in essence, transform them into contracts providing the Yacomeses with coverage above and beyond that provided under the personal automobile policy, i.e., excess or umbrella coverage. The defendants advance three corollary arguments in support of their primary argument that this Court should rewrite the commercial automobile and garage liability policies.

First, the defendants argue that Michael Sisk, Federal Kemper's agent, erred when he unilaterally placed the 1971 Chevrolet Monte Carlo under the personal automobile policy as opposed to the commercial automobile policy. Peter Yacomes, Sr., testified during trial that he had simply conveyed to Sisk the make, model number, serial number and year of the car when he contacted Sisk to obtain coverage. He stated Sisk did not ask him and he did not tell Sisk whether he intended to use the automobile for pleasure, i.e., personal use, or for business purposes in connection with his garage operations. Peter Yacomes, Sr., also stated that he had, in fact, on occasions utilized the Monte Carlo in connection with his business to, e.g., pick up parts for automobiles he was servicing. It is undisputed that on the day of the accident, Peter Yacomes, Jr., was using the car strictly for personal reasons and was in no way performing any work for his father or in connection with the business. Michael Sisk testified that Peter Yacomes, Sr., had indeed discussed with him the manner in which the car would be used and that Yacomes had informed him that the car would be used mostly for personal purposes.[2]

We conclude that we need not resolve the discrepancy between the testimony of these two men because we do not believe it creates an issue of fact material to our decision. Both the personal and commercial automobile policies contain identical per occurrence policy limits of $300,000.00. Thus, whether coverage was provided under the personal automobile policy or the commercial automobile policy is immaterial because under either policy Federal Kemper is legally obligated to indemnify the Yacomeses to the maximum limit of $300,000.00 per occurrence. Even assuming, arguendo, that Sisk negligently placed the Monte Carlo under the personal automobile policy instead of the commercial automobile policy, the result would be the same.[3] We find the defendants' argument in this regard to be unavailing.[4]

1. The defendants have advanced no argument that coverage in addition to that provided by the personal automobile policy existed under the homeowners policy. Thus, we find and conclude that Federal Kemper possessed no duty to defend or indemnify Peter Yacomes, Sr., Peter Yacomes, Jr., or Sally Yacomes under the homeowners policy.

2. According to Sisk's testimony, there is nothing which prevents a car from being utilized for business purposes when insured under a personal automobile policy. Likewise, there is nothing which prevents a car from being utilized for personal purposes when insured under a commercial automobile policy. The classification, except for the bookkeeping rules peculiar to each particular insurer, is only important for the purpose of "rating" the vehicle, i.e., determining the premium to be charged.

3. We note that neither the Yacomeses nor the other defendants, assuming they possess such a cause of action, have asserted a counterclaim or third-party claim against Federal Kemper or Michael Sisk, respectively, so as to allege any negligence on Sisk's part.

4. Likewise, based on our holding, we need not reach the question whether Peter Yacomes, Sr.'s, failure to note that the Monte Carlo had been placed on the personal automobile policy when he received his notice that a premium was due might constitute superseding, intervening negligence on his part or contributory negligence which would insulate Federal Kemper from liability. See e.g., Industrial Valley Bank & Trust Co. v. Dilks Agency, 751 F.2d 637 (3d Cir.1985) and Consolidated Sun Ray, Inc. v. Lea, 401 F.2d 650 (3d Cir.1968), cert. denied, 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969).

Second, the defendants contend that this Court should reform the commercial automobile and garage liability policies in the manner described, *i.e.*, as excess or umbrella coverage, based on Peter Yacomes, Sr.'s, "reasonable expectation" that such policies would provide additional coverage upon exhaustion of the limits of the personal automobile policy. We also find this argument to be without merit.

The "reasonable expectations" doctrine is but another in a line of theories certain courts have adopted to correct actual or perceived injustices resulting from the imbalance in bargaining power between the insurer and the insured and the fact that it is the insurer which drafts the standard insurance contract. The result of the application of any of these theories—unconscionability, contracts of adhesion or reasonable expectations—is the same, *i.e.*, the creation of coverage where none had previously existed under the literal terms of the insurance contract. As initially conceived, the reasonable expectations doctrine was applied to specific terms of the policy. Thus, the doctrine was extremely similar, if not identical, to the ancient principle of the common law of contracts that the ambiguous terms of a contract were to be interpreted most strongly against the drafter, *i.e.*, *"contra proferentem"*, Black's Law Dictionary, 5th Ed. Some would expand the concept of reasonable expectations even further so as to apply it to the entire transaction between the insurer and the insured rather than just a specific provision of the policy. Professor Keeton suggests such a result in the following statement:

> First, as an ideal this principle incorporates the proposition that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters. Arguably that proposition should be regarded as a corollary of the principle of resolving ambiguities against the insurer. The principle of honoring reasonable expectations should be extended further, protecting the policyholder's expectations as long as they are objectively reasonable from the layman's point of view, in spite of the fact that had he made a painstaking study of the contract, he would have understood the limitation that defeats the expectation at issue.

Keeton, "Insurance Law Rights at Variance with Policy Provisions", 83 Harv.L. Rev. 961, 967 (1970); *see also*, Anderson, "Reasonable Expectations and Insurance Contracts: What Should We Reasonably Expect from Judges?" For the Defense, April 1986, Vol. 28, No. 4, and authorities cited therein in which it is stated that the result of Keeton's proposal "is a transition from the use of reasonable expectations in interpretation of specific policy language to reasonable expectations based on the 'type' of policy purchased, and the status of the insured". In this case, the defendants seek to persuade us not that the doctrine of reasonable expectations should be applied to a specific term of the commercial automobile or garage liability policies, but rather that the concept should be applied to some nebulous conceptualization of the type of transaction which occurred between Peter Yacomes, Sr., and Federal Kemper, through its agent Michael Sisk.[5]

We must look to the law of the State of Pennsylvania to determine whether its courts have embraced Keeton's theory since the jurisdiction of this Court is based upon the diversity of citizenship between the parties. The parties' primary dispute in this area is the proper interpretation to be given the Pennsylvania Supreme Court's decision in *Standard Venetian Blind Co. v. American Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983), which overruled the Pennsylvania Superior Court's decision in *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974). The Pennsylvania Superior Court in *Hionis* held that:

---

**5.** The garage liability policy on its face in fact specifically fails to designate the policy as "excess over any other valid and collectible insurance ...," although such a designation is available. (See Plaintiff's Statement of Undisputed Facts, Doc. # 41, Ex. A, p. 8).

where a policy is written in *un*ambiguous terms, the burden of establishing the applicability of the exclusion or limitation involves proof that the insured was aware of the exclusion and that the effect thereof was explained to him.

230 Pa.Super. at 517, 327 A.2d at 365. (Emphasis added).

The Pennsylvania Supreme Court in *Standard Venetian Blind* reversed the Superior Court's decision, reasoning that the Superior Court had failed "to accord proper significance to the written contract, which has historically been the true test of parties' intentions". *Standard Venetian Blind*, 469 A.2d at 567. The Supreme Court stated that:

By focusing on what was and was not said at the time of contract formation rather than on the parties' writing, *Hionis* makes the question of the scope of insurance coverage in any given case depend on how a factfinder resolves questions of credibility. Such a process, apart from the obvious uncertainty of its results, unnecessarily delays the resolution of controversy, adding only unwanted costs to the cost of procuring insurance. Thus, *Hionis*, which would permit an insured to avoid the application of a clear and unambiguous limitation clause in an insurance contract, is not to be followed.

*Id.* [6]

The defendants argue that because *Standard Venetian Blind* involved the interpretation of exclusions in a single policy, as opposed to the question of whether other policies might provide additional coverage, the Supreme Court's opinion is of limited value. We disagree. The majority in *Standard Venetian Blind* clearly delineated the applicable principles when interpreting a contract of insurance. As stated by the Court, those principles are as follows:

The goal ... is ... to ascertain the intent of the parties *as manifested by the language of the written instrument.* (citation omitted). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. (citation omitted). Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. (citation omitted). "[I]n the absence of proof of fraud, 'failure to read (the contract) is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof'." (citation omitted).

*Id.* at 566 (emphasis added). Based on the above language, we find it abundantly clear that the Pennsylvania Supreme Court in *Standard Venetian Blind* rejected the adoption of *any* "reasonable expectation" test.[7] Thus, applying traditional principles of contract law, we find and conclude that the commercial automobile and garage liability policies provide no coverage in addition to that afforded by the personal automobile policy and, therefore, Federal Kemper possesses no duty to defend and/or

---

**6.** Justices Hutchinson and Flaherty, concurring in the majority's judgment, rejected the majority's reliance upon "antedated objective notions of late nineteenth and early twentieth century contract law expressed in terms of meeting of the minds". *Standard Venetian Blind*, 469 A.2d at 570. They instead would look to the "insured's reasonable expectations in purchasing the policy, whether created by the policy language itself or the seller's representations concerning its coverage". *Id.* at 571. Justice Nix, dissenting, concluded that both standard principles of contract law and Justice Hutchinson's "reasonable expectation" test were "equally neb-ulous and neither is appropriate in the area of insurance contract interpretation". *Id.* at 574. He instead would apply the test adopted in *Hionis, supra,* based on his belief that an insurance contract is essentially a contract of adhesion.

**7.** We also find highly enlightening the discussions of Justices Hutchinson and Nix in their respective concurring and dissenting opinions in which they recognize the majority as rejecting the adoption of a reasonable expectation test in favor of the application of traditional principles of contract law.

indemnify the Yacomeses under either policy.[8]

■ The defendants' third and final argument is that Sisk, as Federal Kemper's agent, breached some fiduciary duty he owed to Peter Yacomes, Sr., to insure that Yacomes was provided with adequate monetary coverage. Here, the defendants argue that such a duty exists on Sisk's part based on the long relationship (13 years) between Yacomes and Federal Kemper and Yacomes's claimed reliance upon Federal Kemper and its agents to provide him with proper and adequate insurance.[9] As noted earlier, the defendants have asserted no independent action for negligence or negligent misrepresentation against Sisk or Federal Kemper; rather, they seek to reach the same end as would result from such an action by seeking to have this Court rewrite the terms of the commercial automobile and garage liability policies.

The defendants refer us to no case decided by a Pennsylvania court holding that an insurance agent possesses an affirmative duty to advise a client as to the adequacy of his coverage. Instead, they rely upon a decision by the Court of Appeals of Michigan in which that court held that an insurance agent possesses such a duty, and

where he breaches that duty, the agent is liable for the insured's resulting damages. As stated by the Michigan court,

> An insurance agent does not generally have an affirmative duty to advise a client about the adequacy of a policy's coverage. (citation omitted). However, where a special relationship exists with the insured, an agent has the duty to advise the insured. (citations omitted) . . .
>
> .    .    .    .    .
>
> The existence of a special relationship is a question of fact. (citations omitted). Where the duty to advise has been breached, the insurance agent is liable for any damages resulting from the breach. (citation omitted).

*Stein, Hinkle, Dawe and Associates, Inc. v. Continental Casualty Co.*, 110 Mich. App. 410, 313 N.W.2d 299 (1981).

The ultimate question is whether the Pennsylvania courts would impose such an affirmative duty upon an insurance agent. Our research discloses no instance in which a Pennsylvania court has decided this precise issue.[10] *See e.g., Consolidated Sun*

---

**8.** We note that even if we were to adopt the transactional reasonable expectation test urged upon us by the defendants, our result would be the same. Justice Hutchinson in his concurring opinion in *Standard Venetian Blind* recognized the two possible sources for an insured's reasonable expectation that coverage under a policy exists for the particular loss involved, *viz.*, the policy language itself or the seller's representations concerning its coverage. It is clear that in this case there is no language in either the commercial automobile or the garage liability policies upon which Peter Yacomes, Sr., could have concluded that these policies provided him with excess coverage above and beyond that provided by the personal automobile policy. Likewise, the defendant introduced no testimony or other evidence that Sisk or any other Federal Kemper agent in any way ever led Peter Yacomes, Sr., to believe that such coverage was provided by these policies. The only basis for Peter Yacomes, Sr.'s, contention that such coverage existed was his own subjective belief that because he was paying a premium on each policy, each policy somehow provided excess coverage upon exhaustion of the limits of the other policies. While we have no reason whatsoever to dispute the genuineness of his belief, the simple fact that the insured's expectation is

genuine does not create a contractual obligation on the part of the insurer. If such were the case, insurers would seldom, if ever, be justified in denying coverage and the role of the written contract would be relegated to antiquity since it is simple human nature to believe or pursue that which is most favorable to one's own position.

**9.** The defendants also argue that neither Federal Kemper nor its agent Sisk ever dissuaded Peter Yacomes, Sr., that the commercial automobile and garage liability policies provided excess coverage. To the extent that this argument is but a facet of their reasonable expectation theory, it is unavailing for the reasons stated above. To the extent it is relevant to their breach of fiduciary duty theory, the argument is also unavailing since the defendants failed to introduce any evidence whatsoever that Federal Kemper or Sisk knew that Yacomes possessed such a belief. One cannot dissuade another when one does not know that the other possesses a certain belief or idea.

**10.** Even absent an affirmative duty on behalf of an insurance agent to advise a client as to the adequacy of his coverage, where the agent in

*Ray, Inc. v. Lea*, 401 F.2d 650 (3d Cir.1968) (if the neglect or breach of duty of such broker results in loss to his principal, (*i.e.*, the insured), the broker is liable to the same extent as the insurer would have been liable had the insurance been obtained.) and *Fiorentino v. Travelers Insurance Company*, 448 F.Supp. 1364 (E.D.Pa. 1978) (when insured informs agent of needs and agent's conduct permits reasonable inference that he was highly skilled in this area, insured's reliance on agent to obtain such coverage is justifiable ... circumstances vary with the facts of each case, and depend on relationship between the agent and insured.)

Normally, we would be required to predict how the Pennsylvania courts would decide this issue. Such is not the case in this instance, for even if we assume, without so holding, that Sisk or any other Federal Kemper agent possessed an affirmative duty to advise Peter Yacomes, Sr., as to the monetary adequacy of his coverage, the defendants have failed to introduce any evidence whatsoever that such a duty was breached. The defendants during trial introduced no evidence, expert or otherwise, that any Federal Kemper agent breached any standard of care which might exist in the industry. The burden of proof was upon the defendants to establish the quality and quantity of this standard of care, *i.e.*, what monetary coverage would an ordinary, reasonably prudent insurance agent under the circumstances have advised Peter Yacomes, Sr., to obtain. They failed to meet this burden completely.

It appears that the defendants assumed that, simply because Peter Yacomes, Sr., at one point was potentially subject to personal liability because a judgment might have been rendered against him in excess of the applicable policy limits, *i.e.*, the limits of the personal automobile policy, Federal Kemper, through its agent, breached some duty of care it owed him.[11] The standard of care applicable to any duty Federal Kemper might have owed Yacomes is not measured by simple hindsight. In this case, it would be measured by the foreseeability of events at the time the advice was given or should have been given. The defendants introduced no evidence that an insurance agent would have advised Yacomes to purchase an umbrella policy, *i.e.*, excess coverage, or to increase his policy limits if possible. Having failed to meet this burden of proof, the defendants have also failed to convince this Court that it should in any way reform the commercial automobile or garage liability policies.[12]

It is perhaps tragic that those injured and the estates of those deceased will never be adequately compensated for their losses. Despite our sympathy for the families involved, we must not and cannot allow such sympathy to sway us from a fair and impartial analysis of the issues involved. To do so would delegate insurance companies to the role of charitable institutions and as such, they would not long survive; in which case, there would frequently be no compensation whatsoever for those injured or killed in any case.

For the reasons stated above, we declare that Federal Kemper Insurance Company

fact gives such advice, he is, of course, required to act as an ordinary, reasonably prudent insurance agent would under the circumstances of that particular case and, thus, if he acts in a negligent manner, he may be held liable to the same extent as if he possessed an affirmative duty to render such advice. *See* Restatement 2d of Torts, § 323. No evidence has been introduced in this case that any agent of Federal Kemper either gratuitously or for consideration advised Peter Yacomes, Sr., as to the monetary adequacy of his insurance coverage or that he was asked to so advise.

11. Ironically, it appears that based upon the terms of the releases described earlier, Peter Yacomes, Sr., could never be subjected to personal liability. It appears that once these releases were executed, any cause of action for negligence against Federal Kemper or any of its agents that Peter Yacomes, Sr., might have possessed was extinguished.

12. Based on this aspect of our decision, we need not and do not decide whether reformation of the commercial automobile and/or garage liability policies would be the proper remedy were we to have concluded that Federal Kemper or any of its agents had acted negligently.

possessed no duty to defend or indemnify Peter Yacomes, Sr., Peter Yacomes, Jr., or Sally G. Yacomes under the garage liability policy (Policy No. TOR98569), the commercial automobile policy (Policy No. RY940233) or the homeowners policy (Policy No. UF369880), with regard to the accident at issue. Judgment will, therefore, be entered in favor of the plaintiff and against the defendants. The above discussion shall constitute our Findings of Fact and Conclusions of Law.