**Ronald William KEARNS, Plaintiff,**

v.

**The MINNESOTA MUTUAL LIFE INSURANCE COMPANY, et al., Defendants.**

**No. Civ.A. 97–5358.**

United States District Court, E.D. Pennsylvania.

Nov. 29, 1999.

Gene A. Foehl, Media, PA, for Plaintiff.

Melissa Lang, Philadelphia, PA, for Defendant.

### MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Now before the Court are the cross-motions of plaintiff Ronald William Kearns (Document No. 30) and defendant Minnesota Mutual Life Insurance Company (Document No. 35) for summary judgment, and the motion of defendants David J. Cunningham and SHERPA Financial Services (Document No. 32) for summary judgment. Upon consideration in omnibus fashion of the motions, memoranda, and responses pursuant to Rule 56 of the Federal Rules of Civil Procedure, the motion of plaintiff Ronald William Kearns will be granted in part and denied in part; the motion of defendant Minnesota Mutual Life Insurance Company will be granted in part and denied in part; the motion of defendants SHERPA Financial Service and David J. Cunningham will be granted.

## I. BACKGROUND

This is the ironic case of a plaintiff who is a chiropractor with back problems of his own. In the summer of 1995, plaintiff Ronald William Kearns ("Kearns"), suffering from a herniated lumbar disc, claims he could no longer perform his duties as a chiropractor. On July 8, 1995, he treated his last patient and took a sabbatical from his practice in hopes of healing. However, he alleges he was unable to adjust to the pain he was experiencing because of his injury, and did not return to his practice.

Kearns had purchased insurance to cover him in the event of a disability, but disputes with his insurance company ensued. Kearns held two insurance policies from The Minnesota Mutual Life Insurance Company ("Minnesota Mutual"), which he had purchased with the advice and assistance of his friend and financial consultant, defendant David Cunningham ("Cunningham"). The first policy was a disability policy. The second policy was a business overhead expense ("BOE") policy. It is this latter policy around which the controversy swirls in this case.

The BOE policy was intended to pay out benefits for a limited time to cover certain expenses related to maintaining Kearns' practice should he become disabled. (Motion of Defendant, Minnesota Mutual Life Insurance Company for Summary Judgment, Exhibit H, Deposition of Jon B. Meier, Nov. 20, 1998, at 14–15). The BOE policy defines disability in the following manner:

> Whenever we use the words "disability" or "disabled" in this policy, we mean a sickness or injury which:
>
> (1) requires the reasonable and customary care of a physician; and
>
> (2) results in your inability to perform the substantial and material duties of your regular occupation, as defined further in this section.
>
> You will be considered unable to perform the substantial and material duties of your regular occupation if, due to your disability, your gross earnings from your regular occupation are 50 % or less

of your prior average overhead expenses.

(Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, Exhibit A, Minnesota Mutual Insurance Policy, No. 1–762–193H, at 3 (April 2, 1988)) ("Kearns Policy").

Minnesota Mutual set Kearns' the prior average overhead expenses benchmark at $13,233, based on the earnings of Kearns' practice over the 24 months prior to July 1996, and thus concluded that the earnings of Kearns' practice would have had to decline to $6,617 (50% of $13,233) or less for him to be considered disabled under the policy and be eligible for benefits. In what Minnesota Mutual claims was an error, its agent, without explanation, concluded that Kearns was due benefits under the BOE policy for two weeks during September 1995. (Motion of Defendant, Minnesota Mutual Life Insurance Company for Summary Judgment, Exhibit I, Deposition of Ronald W. Kearns, Nov. 25, 1998 ("Kearns Deposition II") (Exhibit 6, Letter from Minnesota Mutual Agent Ted Nistler to Ronald Kearns, Jan. 18, 1996)). In the same letter, the agent concluded that Kearns was not due benefits for any time after September 1995. (*Id.*)

The current posture of the case is fairly straightforward: Kearns asserts that he is entitled to benefits under the BOE policy, Minnesota Mutual claims he is not. Kearns has stated claims of breach of contract, bad faith, and negligence against Minnesota Mutual, Cunningham, and SHERPA Financial Services ("SHERPA"), the financial consulting business currently owned by Cunningham.

Each of the parties has moved for summary judgment. A summary of their arguments follows: Minnesota Mutual asserts that the terms of its policy are clear and unambiguous, that it acted reasonably and in good faith at all times in its dealings with Kearns, and that it breached no duty it owed to him. Kearns takes issue with Minnesota Mutual's interpretation of the policy language, particularly as to the definition of disability and the expenses includ-

ed in the calculation of earnings for the purpose of ascertaining disability. He also argues that at the time he signed the insurance contract, he did not understand the terms of the policy to be those actually contained in the policy. Cunningham contends that plaintiff's interpretation of the events is flawed, and that he adequately performed the services for which Kearns retained him and thus did not violate any contract, act in bad faith, or breach a duty.

This Court has jurisdiction over the matter due to the complete diversity of citizenship among the parties and the amount in controversy, pursuant to 28 U.S.C. § 1332.

## II. ANALYSIS

Under Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then a motion for summary judgment must be granted. The question before the court at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court's role at summary judgment is not to weigh the evidence, but to determine whether there is a genuine issue for trial; that is, an issue upon which a reasonable jury could return a verdict in the non-moving party's favor. *See id.* at 249, 106 S.Ct. at 2511.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

In deciding whether there is a disputed issue of material fact, the "'inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).[1]

The insurance contract at issue was made and delivered in Pennsylvania, and thus the construction of the terms of the policy is governed by Pennsylvania law. *See Travelers Indem. Co. v. Fantozzi,* 825 F.Supp. 80, 84 (E.D.Pa.1993). Under Pennsylvania law, the interpretation of the terms of an insurance contract is a question of law to be decided by the Court, and where there is no genuine issue of material fact, there is no need to submit the issue to a trier of fact. *See Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mutual Ins. Co.,* 641 F.Supp. 297, 306 (E.D.Pa. 1986), *aff'd,* 833 F.2d 307 (3d Cir.1987) (citing *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985)).

### A. Kearns v. Minnesota Mutual

Kearns has filed what he calls a motion for partial summary judgment against Minnesota Mutual, but he fails to identify the "part" of his claims on which he seeks summary judgment. Indeed, it is this Court's impression from the papers filed

---

1. On cross-motions for summary judgment, the court must determine separately on each party's motion whether judgment may be entered in accordance with the summary judg-

ment standard. *See Sobczak v. JC Penny Life Ins. Co.,* 1997 WL 83749 (E.D.Pa. Feb. 18, 1997).

by plaintiff that he seeks full summary judgment as to all his claims against Minnesota Mutual. Thus, the Court will treat plaintiff's motion as one for summary judgment on his contract, bad faith, and negligence claims against Minnesota Mutual.

## 1. Contract Claim

Kearns appears to advance four arguments in support of his contention that Minnesota Mutual breached its contract with him by denying benefits under the insurance policy: (1) Minnesota Mutual should be bound by its initial decision to pay out benefits for September 1995; (2) Minnesota Mutual failed to include the salary of another chiropractor employed by Kearns in its determination of prior overhead expenses; (3) when Kearns bought the BOE policy, he understood its terms to be different from those actually in the policy; and (4) the relevant income for calculating the disability figures under the BOE policy was Kearns' personal earnings from his practice, and not the earnings of the entire practice.

■ Plaintiff's first three arguments fail. Essentially, Kearns' first argument is that Minnesota Mutual's initial payment of benefits under the BOE policy estops Minnesota Mutual from now arguing that he was not eligible. However, a partial, initial payment of insurance benefits does not necessarily create estoppel. *See Home for Crippled Children v. Prudential Ins. Co.*, 590 F.Supp. 1490 (W.D.Pa.1984) (insurance company that made an initial payment of benefits for inpatient treatment was not estopped from arguing that recipient was ineligible for benefits due to a preexisting condition). To establish equitable estoppel, plaintiff must show that

there was inducement and that plaintiff justifiably and detrimentally relied on that inducement. *See id.* at 1503. Kearns has introduced no evidence that he relied on the initial payment of benefits by Minnesota Mutual for September 1995 to his detriment. He would be hard pressed to find such evidence, as the letter that notified plaintiff of the initial payment of benefits under the BOE policy also informed him that Minnesota Mutual had concluded he was not eligible for any additional benefits under the policy. Thus, I conclude that there was no time period after the initial payment and before the denial of benefits during which plaintiff could have relied to his detriment on an expectation of future benefit payments.

■ Plaintiff's second argument is that Minnesota Mutual under-assessed his prior average overhead expenses by excluding from its calculation the salary Kearns paid to Paul Sinnot, a chiropractor employed by Kearns' incorporated practice, Radnor Chiropractic.[2] The policy plainly and clearly states that "remuneration received by ... any other member of your profession or any person sharing your overhead business expenses" and "any expenses incurred as a result of hiring another" are not covered by the policy, and are therefore excluded from the determination of prior average overhead expenses. (Kearns Policy, at 4). Plaintiff offers neither persuasive argument nor substantive evidence to suggest why this Court should ignore the plain language of the policy, and therefore, I conclude that plaintiff has failed to establish a genuine issue of material fact as to whether the salary of Sinnot should have been included in the calculation of his prior average overhead expenses.[3]

**2.** In 1994, 6 years after purchasing the BOE policy as a sole proprietor, Kearns incorporated his practice.

**3.** The evidence now before the Court indicates that Minnesota Mutual offered a replacement expense agreement (a policy rider that would have covered the expense of Sinnot's salary) that Kearns did not purchase.

Kearns appears to argue that the Court should nonetheless find that Kearns was entitled to coverage of Sinnot's salary. The basis of this argument appears to be Minnesota Mutual's initial payout of benefits for two weeks in September 1995. Kearns argues that the initial payment of benefits proves that Minnesota Mutual included Sinnot's salary in its initial computations. However, Kearns of-

■ Plaintiff summarized his third argument with respect to his contract claim in this way in his deposition testimony:

My understanding when I bought the policy was that if I go on disability, I will receive the face value per month of the benefit for a period of one year to 15 months, whatever it is.... Now, maybe the policy it does [sic] state something different, and I'm not contesting so much the policy in that respect, I'm just contesting how the policy was sold to me, and then their honoring what I bought.

(Motion of Defendant, Minnesota Mutual Life Insurance Company for Summary Judgment, Exhibit I, Deposition of Ronald W. Kearns, Nov. 19, 1998 ("Kearns Deposition I"), at 112–13).[4] Essentially, Kearns is asserting a claim for reformation on the basis of unilateral mistake. Such a claim requires proof that one party to a contract had a mistaken belief, and that the other party knew of that mistake. *See PC Specialities v. State Auto Mut. Ins. Co.*, 1997 WL 330371 (E.D.Pa. June 9, 1997). I conclude that Kearns has not produced evidence based upon which a reasonable trier of fact could find that Minnesota Mutual knew of Kearns' unique perspective on the BOE policy, and thus this argument will not survive summary judgment.[5]

■ Plaintiff's final argument concerns the meaning of the policy language "your gross earnings" as it is used in determining disability. The relevant policy clause reads, "You will be considered unable to perform the substantial and material duties of your regular occupation if, due to your disability, *your gross earnings* from your regular occupation are 50% or less of your prior average overhead expenses." (Kearns Policy, at 3 [emphasis added] ). The term "gross earnings" is not defined by the policy.

Plaintiff argues that the words "your gross earnings" apply to his personal earnings from his practice, and that because his personal earnings from his practice dipped below the 50% of prior average overhead expenses threshold, he was entitled to benefits under the BOE policy. Minnesota Mutual counters that "gross earnings" necessarily describes the earnings of an entire business or corporation (here, plaintiff's corporation, Radnor Chiropractic), and that those earnings never fell to 50% of his prior average overhead expenses.

■ In interpreting an insurance policy, unambiguous terms should be given their plain and ordinary meaning. *See St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir.1991). In the policy, the term "gross earnings" is modified by the term "your," which is defined in the policy as "[t]he person who is insured under this policy as shown on page 1."[6] The name "Ronald W. Kearns" appears on

---

fers no evidence that Minnesota Mutual included Sinnot's salary in its calculation of those initial benefits. Furthermore, as discussed above, the initial payment does not create estoppel.

4. Plaintiff admits that he did not read the BOE policy when he purchased it or when he received a copy of the policy after purchasing it. (Kearns Deposition I, at 79, 110).

5. Kearns' claim is similar to the plaintiff in *Federal Kemper Ins. Co. v. Yacomes*, 641 F.Supp. 276 (E.D.Pa.1986), in which plaintiff asserted that he had a "reasonable expectation" that the garage liability and automobile policies he purchased would provide additional coverage upon the exhaustion of his personal automobile policy. The court concluded that the "reasonable expectations" doctrine, under which an insured's reasonable expectations concerning coverage could

provide a basis for reforming an insurance contract, had been decimated by the holding of the Pennsylvania Supreme Court in *Standard Venetian Blind Co. v. American Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983). See *Yacomes*, 641 F.Supp. at 280. Thus, Kearns' argument based on his "reasonable expectation" of coverage under the BOE policy is not persuasive.

6. Minnesota Mutual argues that the "your gross earnings" language must be interpreted to mean the income of the practice. In support of its argument, Minnesota Mutual draws on generic definitions of gross earnings and gross income for corporations, an approach that begs the very question of whether the relevant earnings in this case are those of the corporation (Radnor Chiropractic) or the person (Kearns). In focusing its analysis on the term "gross earnings," Minnesota Mutual ig-

page one as the insured under the policy. Thus, giving the unambiguous terms of the policy their plain and ordinary meaning, it is clear that the gross earnings of Kearns, not of Radnor Chiropractic, are the proper figure for determining disability under the BOE policy.[7] Additionally, the policy language further modifies the term gross earnings by referring to "your gross earnings *from your regular occupation*," (Kearns Policy, at 3 [emphasis added]), further supporting the only reasonable interpretation of the clause: that the individual's personal earnings from his or her occupation, as opposed to his or her practice, is the relevant figure. I therefore conclude that the term "gross earnings" in Kearns' BOE policy refers to Kearns' personal earnings, and not the earnings of Radnor Chiropractic.[8]

Plaintiff has produced evidence that his earnings were well below the threshold of 50% of his prior average overhead expenses. (Plaintiff's Motion for Partial Summary Judgment, Exhibit B). The figures appear to be valid in light of the evidence on the record, and defendants have not presented evidence contesting their veracity or accuracy, with the exception of the figures for one month.[9] I conclude that there is no genuine issue of material fact with respect to plaintiff's contract claims to benefits due under the BOE policy, and that plaintiff is entitled to summary judgment on his claim for benefits under the BOE policy.

Because plaintiff has produced sufficient evidence to prevail on his motion for summary judgment, his motion will be granted and the motion of Minnesota Mutual for summary judgment as to the contract claim will be denied.

## 2. Bad Faith

■ Plaintiff also asserts a claim of bad faith under 42 Pa.C.S.A. § 8371.[10] Be-

---

7. nores the modifier "your," which indisputably refers to Kearns in his personal capacity, thus indicating "your gross earnings" refers to Kearns' personal earnings, not those of Kearns' business. No reasonable person could determine otherwise.

7. In 1994, 6 years after purchasing the BOE policy as a sole proprietor, Kearns incorporated his practice. There is no evidence on the record that Kearns or Minnesota Mutual changed the name of the insured in the policy from Kearns to Radnor Chiropractic, and thus the Court must conclude that Kearns, not Radnor Chiropractic, is the insured under the BOE policy. Minnesota Mutual apparently argues that the incorporation effected a substitution of the insured. from Kearns to the corporation, Radnor Chiropractic. There is nothing in the policy that mandates such a conclusion, and Minnesota Mutual has offered no compelling reason for why the Court should so hold.

8. Even if this Court were to conclude that the terms of the insurance policy were ambiguous, the outcome of my analysis would be the same. Where an insurance policy is ambiguous, that is, where more than one reasonable construction of its language exists, the court must apply the construction that favors coverage to the insured. See Pecorara v. Erie Ins. Exchange, 408 Pa.Super. 153, 156, 596 A.2d 237, 239 (1991) (citing Celley v. Mutual Benefit & Health & Accident Assoc., 229 Pa.Super.

475, 482–83, 324 A.2d 430, 434–35 (1974)); see also Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co., 641 F.Supp. 297, 298 (E.D.Pa.1986), aff'd, 833 F.2d 307 (3d Cir.1987). Thus, even if I were to hold that the policy is ambiguous, precedent would demand a conclusion in favor of coverage, and therefore in favor of Kearns.

9. Minnesota Mutual correctly points out that Kearns figures for the gross earnings of his practice during October 1995 do not comport with the financial statements submitted by Kearns to Minnesota Mutual in support of his claim. (Defendant, The Minnesota Mutual Life Insurance Company's Response to Plaintiff's Motion for Partial Summary Judgment, Exhibit E). However, because I conclude that there is no genuine issue of material fact that his personal earnings fell below the disability threshold for the other relevant months, I will leave a determination of the benefits due for October 1995 to the damages phase, which is discussed in the attached Order.

10. The statute, 42 Pa.C.S.A. § 8371, reads:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made

cause the statute does not contain a definition of bad faith, Pennsylvania courts have applied the definition set forth in Black's Law Dictionary:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. . . . For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Black's Law Dictionary* 139 (6th ed.1990). *See Greco v. Paul Revere Life Ins. Co.*, 1999 WL 95717 (E.D.Pa. Feb. 12, 1999) (quoting *Terletsky v. Prudential Property & Casualty Ins. Co.*, 437 Pa.Super. 108, 125, 649 A.2d 680, 688 (1994) and citing *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994)). At trial, plaintiff must prove bad faith by clear and convincing evidence, and thus his burden of producing evidence in support of his claim at summary judgment is substantial. *See Eisenberg v. National Union Fire Ins. Co.*, 1998 WL 404053 (E.D.Pa. July 9, 1998).

 Plaintiff has introduced no evidence that Minnesota Mutual's denial of coverage was unfounded, frivolous, or dishonest. In light of the evidence on the record, viewed under the exacting standard for bad faith claims at the summary judgment stage, I conclude that Minnesota Mutual's interpretation of its policy, while contrary to the language of the policy in the opinion of this Court, was not motivated by ill will or a desire to defraud Kearns. Plaintiff's motion for summary judgment on his claim of bad faith against Minnesota Mutual therefore will not prevail as a matter of law. Furthermore, in light of the fact that plaintiff has not produced evidence from which a rational trier of fact could find that Minnesota Mutual acted in bad faith, the motion of Minnesota Mutual for summary judgment will be granted on plaintiff's bad faith claim.

### 3. Negligence

 Finally, plaintiff will not prevail on his claim of negligence against Minnesota Mutual. Under Pennsylvania law, where, as here, a negligence claim closely resembles and arises out of a breach of contract,[11] a court must determine whether there was an improper performance of a contractual obligation (misfeasance) or a mere failure to perform (nonfeasance); misfeasance gives rise to an action in tort, and nonfeasance does not. *See Fink v. Delaware Valley HMO*, 417 Pa.Super. 287, 296, 612 A.2d 485, 490 (1992) (citing *Raab v. Keystone Ins. Co.*, 271 Pa.Super. 185, 187–88, 412 A.2d 638, 639 (1979)). Kearns alleges in the negligence count in his complaint that Minnesota Mutual failed to advise him of the BOE policy's terms and conditions and refused to make benefit payments. Plaintiff thus alleges mere nonfeasance and cannot recover under a negligence theory. *See id.* Therefore, Kearns' motion for summary judgment as to his negligence claim against Minnesota Mutual will be denied, and Minnesota Mutual's motion for summary judgment on the negligence claim will be granted.

### B. Kearns v. Cunningham and SHERPA

Kearns asserts claims of breach of contract, bad faith, and negligence against David Cunningham and SHERPA Finan-

---

> by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

**11.** In Count II of plaintiff's amended complaint, in which plaintiff asserts a negligence claim against Minnesota Mutual, plaintiff reincorporates the language of the contract claim and bases its claim on Minnesota Mutual's failure to pay out benefits under the insurance policy and its failure to properly advise him of its terms and conditions. The negligence allegations thus closely resemble those of plaintiff's contract claim.

cial Services. Cunningham and SHERPA move for summary judgment on the ground that plaintiff has presented insufficient evidence to support his claims.

### 1. SHERPA

Kearns' claims against SHERPA have no basis. SHERPA did not exist when Kearns purchased the BOE policy from Minnesota Mutual in 1988. SHERPA did not come into being until 1990 at the earliest. (Motion of Defendant, Minnesota Mutual Life Insurance Company for Summary Judgment, Exhibit K, Deposition of David J. Cunningham, Dec. 11, 1998, at 11) ("Cunningham Deposition"). The only conduct relevant to plaintiff's claim against SHERPA is the purchase of the policy and the representations made to him in 1988, and SHERPA cannot be found liable for such conduct because SHERPA simply did not exist at the relevant time. Plaintiff alleges no continuing conduct by Cunningham or subsequent conduct by SHERPA as the basis for liability under any of his claims. SHERPA is not a party to the insurance policy, nor was it required to pay benefits under the policy, and thus it is not liable for conduct that took place after the purchase of the policy. Plaintiff does not address SHERPA's liability in his response to SHERPA's motion for summary judgment, nor does he present any evidence of conduct by SHERPA that could form a basis for liability under contract, negligence, or bad faith theories. Thus, I conclude that plaintiff has failed to raise a genuine issue of material fact as to any of his claims against SHERPA.

### 2. Cunningham

Cunningham was an insurance broker, and in that capacity operated as a "middleman" between Kearns and Minnesota Mutual. (Cunningham Deposition, at 37). He suggested that Kearns purchase insurance, advised Kearns as to the type of insurance he should purchase, selected Minnesota Mutual as the insurance carrier, explained the policies to Kearns, and handled the paperwork. (*Id.* at 38–41).

 Cunningham's status as an insurance broker, and not an insurance agent, has consequences for Kearns' contract claim against Cunningham.[12] A broker is, by definition, the agent of the insured (here, Kearns). Under the law of agency, Cunningham, as Kearns' broker, was Kearns' representative in the formation of the insurance contract with Minnesota Mutual; any consent by Cunningham, within the scope of his dealings with Minnesota Mutual, was binding on Kearns, and any information Cunningham knew at the time of the contract's formation is imputed to Kearns. *See Rich Maid,* 641 F.Supp. at 305. As a mere a representative of Kearns, Cunningham was not a party to the contract between Kearns and Minnesota Mutual. Thus, I conclude that no reasonable trier of fact could find Cunningham liable under a contract theory for Minnesota Mutual's failure to pay benefits under the BOE policy.

Kearns' bad faith claim against Cunningham fails for identical reasons. The basis of Kearns' bad faith claim is the refusal to pay benefits under the Minnesota Mutual BOE policy. As discussed above, because Cunningham was Kearns' broker and not Minnesota Mutual's agent, Minnesota Mutual's failure to pay benefits is not attributable to Cunningham. Furthermore, even if Cunningham were an agent of Minnesota Mutual, I have concluded that Minnesota Mutual did not act

12. In *Rich Maid,* 641 F.Supp. at 304–05, the court considered the following four factors in determining whether an individual was an insurance broker: (1) the existence of a prior personal relationship between the insured and the individual; (2) whether the insured requested the individual to place the insurance with a specific company; and (3) whether the individual was or appeared to be an authorized agent of a particular company. Here, Cunningham clearly had a prior personal relationship with Kearns, Kearns did not specify a particular company, and Cunningham was not, nor did he appear to be an authorized agent of Minnesota Mutual or any other particular company. Cunningham is unquestionably a broker.

in bad faith in denying benefits to Kearns. Summary judgment will be granted on Kearns' claim of bad faith against Cunningham.

■ Plaintiff also fails to produce sufficient evidence to create a genuine issue of material fact as to his claim that Cunningham was negligent in the brokerage services he provided.

■ Under Pennsylvania law, the basic elements of a cause of action founded upon negligence are:

(1) a duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct;

(2) a failure on his part to conform to the standard required;

(3) a causal connection between the conduct and resulting injury; and

(4) actual loss or damage resulting to the interests of another.

*See Fennell v. Nationwide Mut. Fire Ins.*, 412 Pa.Super. 534, 539, 603 A.2d 1064, 1066–67 (1992) (discussing alleged negligence of insurance agent) (citations omitted). In order to avoid Cunningham's motion for summary judgment, Kearns must therefore produce evidence that would persuade a reasonable trier of fact that of each of the above elements is met.

■ Kearns fails to meet his burden even on the first element. In Pennsylvania,

[a]n insurance broker is under a duty to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances and if the broker fails to exercise such care and if such care is the direct cause of the loss to his consumer, then he is liable for such loss unless the customer is also guilty of failure to exercise the care of a reasonably prudent businessman for the protection of his own property and business which contributes to the happening of such loss.

*See Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d 650, 656 (3d Cir.1968), *cert. denied*, 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969) (quoting *Talley v. Hoffman*, 18 Pa.D. & C.2d 725, 729 (1959)). Kearns has not produced a shred of evidence establishing the duty of care owed by an insurance broker. Kearns offers nothing in support of his negligence claim but his own deposition testimony that Cunningham did not sufficiently review the BOE policy with him and failed to describe the circumstances under which Kearns would and would not be eligible for benefits under the policy. (Kearns Deposition I, at 54–55; Kearns Deposition II, at 61–62).[13] However, a plaintiff's unembellished, *ad hoc* statement at a deposition does not amount to evidence of the standard of conduct or a breach of duty, particularly a specialized duty such as that of an insurance broker. *See Provident Life and Accident Ins. Co. v. Charles*, 1993 WL 121504 (E.D.Pa. April 14, 1993) (granting summary judgment where insured failed to present evidence of breach of duty by insurance agent); *see also Federal Kemper Ins. Co. v. Yacomes*, 641 F.Supp. 276, 282 (E.D.Pa.1986). Plaintiff has simply stated what he thought Cunningham should have done, but plaintiff has produced no evidence that his standard was the standard of care applicable or prevailing among insurance brokers at the time.

Kearns' evidence in support of his negligence claim against Cunningham underwhelms me, and therefore I conclude that a reasonable jury could not find on the basis of the evidence before me that Cunningham, in his work for Kearns, breached a particular duty of care of a reasonably prudent businessperson in the brokerage field under similar circumstances. I conclude that based upon the record presented by plaintiff, the jury would be left to speculate as to the standard of care and the duty owed by Cunningham. Thus Cunningham's motion for summary judg-

---

**13.** Cunningham claims that he reviewed with Kearns the various coverage issues under the BOE policy in great detail. (Cunningham Deposition, at 34–41).

ment as to plaintiff's negligence claim will be granted.

## III. CONCLUSION

For the foregoing reasons, Kearns' motion for summary judgment as to liability on his contract claim against Minnesota Mutual will be granted, and summary judgment will be denied as to his claims of negligence and bad faith. Minnesota Mutual's motion for summary judgment will be granted as to Kearns' claims of negligence and bad faith, and denied as to the contract claim. Summary judgment will be granted to Cunningham and SHERPA on all of plaintiff's claims.

An appropriate Order follows.

### ORDER

**AND NOW,** this 29th day of November, upon consideration in omnibus fashion of the cross-motions for summary judgment of plaintiff Ronald William Kearns (Document No. 30) and defendant Minnesota Mutual Life Insurance Company (Document No. 35), and the motion of defendants David J. Cunningham and SHERPA Financial Services (Document No. 32) and the memoranda in support thereof and responses thereto, and having throughly reviewed the pleadings and evidence pursuant to Rule 56 of the Federal Rules of Civil Procedure and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that:

(1) the motion of Kearns for summary judgment is **GRANTED,** as to liability only, on Count I of his Amended Complaint (Document No. 7) for breach of contract, and **DENIED** on Count II for negligence and Count III for bad faith;

(2) the motion of Minnesota Mutual is **DENIED** on Count I for breach of contract and **GRANTED** on Count II for negligence and Count III for bad faith; and

(3) the motion of David J. Cunningham and SHERPA Financial Services is **GRANTED** on Counts IV and VII for breach of contract, Counts V and

VIII for negligence, and Counts VI and IX for bad faith, respectively.

It is **FURTHER ORDERED** that defendant Minnesota Mutual and plaintiff Kearns present to the Court a stipulation as to the amounts of damages due under the business expense overhead policy no later than December 13, 1999.

It is **FURTHER ORDERED** that if the parties are unable to agree on the amount of damages due, plaintiff shall so notify the Court in writing by December 13, 1999, by filing a request for a hearing on damages, which will be scheduled by the court in due course.

This is not a final order.