John KRISA, Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE
SOCIETY, Defendant.

No. 3:CV–97–1825.

United States District Court,
M.D. Pennsylvania.

April 6, 2000.

Alan M. Feldman, Feldman, Shepherd, Wohlgelernter & Herman, Philadelphia, PA, for Plaintiff.

Andrew F. Susko, White and Williams, Allentown, PA, Platte B. Moring, III, Allentown, PA, for Defendant.

## MEMORANDUM

VANASKIE, Chief Judge.

This action pending in this Court on the basis of diversity jurisdiction under 28

U.S.C. § 1332 concerns two disability insurance policies purchased by plaintiff John Krisa from defendant Equitable Life Assurance Society ("Equitable"). Krisa claims entitlement to total disability benefits under the policies on the ground that labile hypertension renders him unable to pursue his chosen profession as a trial lawyer. Contending that the applicable test under the policies is whether Krisa was unable to engage in *all* the substantial and material duties of his regular occupation at the time he became disabled, and asserting that labile hypertension did not preclude Krisa from engaging in certain of the activities that he described as part of the substantial and material duties of his legal practice at the time he applied for disability benefits, Equitable has denied Krisa's claim. Krisa's complaint asserts four causes of action: (1) breach of contract; (2) violation of Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. § 8371, in the denial of his total disability claim; (3) fraud and/or negligent misrepresentation in connection with the sale of the policies to him; and (4) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.* Equitable has moved for summary judgment on all counts with respect to Krisa's claim for total disability benefits.[1]

Having carefully considered the record and the applicable case law, I find that there are genuine disputes as to material facts with respect to Equitable's assertion that Krisa's breach of contract, fraud and UTPCPL claims should be dismissed. As to Krisa's bad faith claim, however, I find that Krisa has failed to proffer evidence that would enable a jury to find by the requisite clear and convincing standard that Equitable's denial of benefits was without reasonable basis and that Equitable knew or recklessly disregarded the lack of a reasonable basis for denying the claim for total disability benefits. In accordance with Rule 56(d) of the Federal Rules of Civil Procedure, partial summary judgment will be entered in favor of Equitable with respect to the claim in Count II of Krisa's complaint that concerns bad faith in the denial of his claim for total disability benefits. Equitable is also entitled to judgment on Krisa's demand for emotional distress damages for alleged violations of the UTPCPL. In all other respects, Equitable's summary judgment motion will be denied.

Also pending in this matter is Equitable's Motion to Strike Krisa's Eleventh and Twelfth Affirmative Defenses to Equitable's counterclaim. Equitable's counterclaim asserts that Krisa committed fraud in his claim for disability benefits. Equitable contends that Krisa's Eleventh Affirmative Defense (which asserts that the costs and counsel fees claimed by Equitable were caused by the allegedly unreasonable conduct of Equitable's investigators and counsel in their handling of this litigation), and Twelfth Affirmative Defense (which asserts that Equitable's claims are frivolous and made in violation of Rule 11 of the Federal Rules of Civil Procedure), are scandalous, immaterial and impertinent. Having carefully considered the matter, I will strike the Twelfth Affirmative Defense, but not the Eleventh.

---

1. Krisa's original complaint was limited to Equitable's decision to deny total disability benefits. At the time he filed this action, Equitable had not decided whether Krisa was entitled to "residual" or "partial" disability benefits. By letter dated January 29, 1999, Equitable informed Krisa's counsel that Krisa did not meet the definitions of either total or residual disability. By Order dated April 30, 1999, Krisa's motion to amend his complaint to add a claim based upon the denial of residual disability benefits was granted, and an amended complaint including claims based upon the denial of residual benefits was filed on May 10, 1999. As the amended complaint was filed after Equitable moved for summary judgment, the decision to deny residual disability benefits and the handling of Krisa's claims for such benefits are not covered by Equitable's summary judgment motion.

## I. BACKGROUND

It is beyond cavil that the record presented by the parties must be examined in the light most favorable to Krisa, the non-moving party. *See White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). All reasonable inferences that favor Krisa which the record supports must be considered. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Viewed from this perspective, the record reveals the following:

In 1985, Krisa was sold an Equitable disability insurance policy by Joseph Keating, an agent then employed by Equitable. During the course of selling the policy to Krisa, Keating explained that coverage for "the inability to engage in the substantial and material duties of your regular occupation" meant that if Krisa could not engage in the activities of a trial lawyer, but could otherwise work as an attorney, he would be considered disabled under the terms of the policy. (Keating Dep. at 31.) Keating also presented Krisa with an illustration that defined the phrase "regular occupation" as the "occupation ... or *recognized specialty* in which you are regularly engaged for profit or gain at the time you become disabled." (Ex. A to Plaintiff's Exhibits in Opposition to Defendant's Motion for Summary Judgment; emphasis added.) This illustration was consistent with Keating's explanation that the inability to engage in a specialized field of practice rendered the insured eligible for disability benefits. On the application for the policy, Krisa generally described his duties as "Courtroom Attorney." (Ex. "C" to Equitable's Statement of Material Facts.)

The policy issued to Krisa, PN85705469, provided a monthly total disability benefit of $4,500. (*Id.*) It defined "total disability" as the inability "to engage in the substan-

tial and material duties of your regular occupation." (*Id.*) "Regular occupation" was defined as "the occupation (or occupations, if more than one) in which you are regularly engaged for gain or profit at the time you become disabled." (*Id.*) Contrary to the written illustration Keating provided to Krisa, the policy definition of "regular occupation" did not explicitly encompass a "recognized specialty." While Krisa does recall being assured by Keating that he would be entitled to benefits in the event that he was unable to engage in a litigation attorney's practice, he does not recall reading the policy between 1985 and 1990. (Krisa Dep. at 124.)

In July of 1992, Krisa applied to Equitable for another disability income insurance policy. Charles Rader was the Equitable agent who sold Mr. Krisa his 1992 policy. (Equitable Statement of Material Facts (Dkt. Entry 76) at ¶ 7.)[2] In connection with this transaction, Rader used the same illustration that Keating had used in 1985. That is, Rader provided Krisa with an illustration that defined "your regular occupation" as including the "recognized specialty" in which the insured was regularly engaged for profit or gain at the time he or she became disabled. Rader explained to Krisa that if he was a litigator and was disabled from doing trial work, but could do other legal work, he would qualify for a disability benefit. (Rader Dep. at 29–30.) This explanation was consistent with Rader's understanding that the Equitable policy would provide benefits in the event that an attorney with a specialty in trial practice was unable to perform that specialty. (*Id.* at 76–77.)

In October of 1992, Equitable issued a disability income policy to Krisa under policy number PN 92710988 with a monthly benefit of $2,500. The 1992 policy contained the identical definitions of "total

2. Local Rule of Court 56.1 requires a party moving for summary judgment to provide in separately numbered paragraphs a concise statement of material facts as to which it is contended there is no genuine dispute. The non-movant must respond to each numbered paragraph, indicating whether the movant's statement is admitted or contested. A citation to Equitable's Statement of Material Facts in this opinion signifies that the pertinent matter has been admitted by Krisa.

disability" and "regular occupation" as were contained in the 1995 policy. While the policy was issued by Equitable, it was not delivered to Krisa. (Krisa Dep. at 144–45.)

In December of 1996, Krisa was hospitalized with a primary diagnosis of "labile hypertension."[3] (Ex. "F" to Plaintiff's Exhibits in Opposition to Defendant's Motion for Summary Judgment.) Krisa's attending physician, Dr. Kurt Moran, regarded the labile hypertension as precluding Krisa from practicing as a trial lawyer.

On February 10, 1997, Krisa filed a disability claim on both policies issued by Equitable, asserting total disability beginning December 6, 1996. On February 24, 1997, Equitable requested medical records from Dr. Moran and the Community Medical Center, the hospital where Krisa had received treatment in December of 1996. Equitable also requested records from the Social Security Administration, information concerning Krisa's law firm, and the status of Krisa's attorney license. (Equitable's Statement of Material Facts at ¶ 10.) In May of 1997, Krisa submitted to Equitable an attending Physician's Statement in which Dr. Moran opined that Krisa was totally disabled from his occupation as a result of labile hypertension. (*See* Ex. "F" to Plaintiff's Exhibits in Opp. to Defendant's Summary Judgment Motion.) Krisa also submitted a claimant's Statement for Disability Benefits. (Equitable Statement of Material Facts at ¶ 11.) In response to the request that he list the

duties of his occupation in order or importance, Krisa stated:

- Litigate personal injury claims [35 hours per week]
- Firm Administrator & Managing Attorney [five hours per week]
- Solicitor, Carbondale Area and Lakeland School District [5 hours per week]

(Exhibit "H" to Equitable's Statement of Material Facts.)

In June of 1997, Equitable field representative Henry Radke interviewed Krisa at Krisa's law office. (Ex. "H" to Equitable's Statement of Material Facts at Bates No. 000–125–27.) While Krisa informed Radke that he had reduced his work load by about 50%, he also told Radke that his doctor had advised him not to work. (Radke Dep. at 50.) In July of 1997, Equitable received the medical records of Dr. Moran. Along with those records, Dr. Moran submitted the following statement:

John Krisa has been a patient of mine since his first admission to the hospital for uncontrolled hypertension. After a difficult time in controlling his blood pressure during his hospital stay, he was discharged with an average blood pressure of 130/80. However, after returning to his current life style and work, which is most hectic, to say the least, his blood pressure has been vacillating from 120/80 to 190/120, depending on his work load and various commitments. He has had a complete work up for secondary hypertension, of which all results are negative. It is clear that his blood pressure is greatly influenced by the huge pressure placed on him by the

---

3. Hypertension, commonly regarded as high blood pressure, refers to "persistently high arterial blood pressure." R. Sloane, *The Sloane–Dorland Annotated Medical–Legal Dictionary* at 355 (1987). As explained in *United States v. CIBA GEIGY Corp.*, 508 F.Supp. 1118, 1122 (D.N.J.1976):

'Hypertension' means an elevation of the blood pressure within the arterial system of the body which is in excess of the generally accepted level of 140 systolic or pumping pressure and 90 diastolic or resting pressure. There are different degrees of

hypertension, generally referred to as mild, moderate, moderate to severe, and severe, depending upon the extent of the elevation of the blood pressure. It is generally believed in the medical literature that, as has ben [sic] demonstrated by short-term and long-term studies, such elevation of the blood pressure is directly contributory to the early onset of strokes, heart attacks, kidney failure, etc.

"Labile" hypertension refers to unstable or fluctuating hypertension. *See* R. Sloane, *supra*, at 401.

nature of his work. He has been on a multitude of combination antihypertensives, with an antidepressant and a daily sedative. In view of this, I have recommended him to stop practicing as a court room or trial lawyer. The patient has been following a rigid diet and exercise program. I explained to him that in view of his family history of heart disease, hyper-cholesterolemia and vacillating hypertension, he is a prime target for coronary artery disease, and unless something is done now, he will be sacrificing his future quality of life and risking his life. Thus, he is, within a reasonable degree of medical certainty, totally and permanently disabled for the purpose of being a court room or trial attorney. Along with this, the patient has been diagnosed with obsessive, compulsive disorder and hyperthyroidism, that are currently also being treated.

(Ex. H. to Equitable's Statement of Material Facts at Bates No. 000102.)

By letter dated August 8, 1997, an Equitable claims manager forwarded to Krisa a refund of his premium payments, with the following explanation:

> As your disability has continued for a period of 90 days, you are eligible for the Waiver of Premium Benefit as stated in your policy. Effective with the premium due December 7, 1996, the company will waive the payment of premium and automatically keep your policy in force. You will not be required to pay any further premiums as long as you remain disabled as defined in your policy. [*Id.* at 000175.]

By letter dated August 14, 1997, an Equitable senior claims examiner sent to Krisa checks providing total disability benefits covering the period December 6, 1996 to April 6, 1997. (*Id.* at 000194.) The letter also requested additional information pertaining to Krisa's occupation as a trial attorney. (*Id.*) In particular, the letter requested specific information as to his trial practice. The letter also noted that Krisa may qualify under the residual disability provisions of the Equitable policies in view of the fact that he was working only in a limited capacity. *Id.*[4]

On August 20, 1997, both by way of a telephone communication and a letter, Krisa's counsel asserted that the requests for additional information were irrelevant to his eligibility for total disability benefits under the applicable policies. *Id.* at 000179–80, 182–84. Krisa's counsel demanded payment of all benefits due within ten (10) days or suit would be brought.

By letter dated August 26, 1997, Equitable responded to the August 20, 1997 correspondence from Krisa's counsel. In this letter, Equitable asserted:

> Mr. Krisa's professional activities are extremely relevant to his eligibility for benefits under his policies. Disability is based on the occupation at the times the claims commenced, not the occupation at the time the policy was issued.
>
> \* \* \* \* \* \*
>
> [I]t appears that Mr. Krisa is not totally disabled, however, he may be residually disabled, and financial information as well as clarification of Mr. Krisa's exact job duties is needed in order to process any further benefits at this time. [*Id.* at 000188.]

By letter dated September 4, 1997, counsel for Krisa requested that Equitable either pay the claim or deny it. Equitable

---

4. "Residual" disability was defined in the Disability Income Rider to the 1985 policy as the inability to perform "(1) one or more of the substantial and material duties of your occupation; or (2) the substantial and material duties of your occupation for as much time as is usually required to perform them." (Ex. "C" to Equitable's Statement of Material Facts.) The Residual Disability Income Rider to the 1992 policy defined "residual" disability as meaning "that due to Injury or Sickness you suffer a Proportionate Loss of Income of at least 20 percent of Prior Monthly Earnings." (Ex. "D" to Equitable's Statement of Material Facts.)

responded by requesting yet additional information. (*Id.* at 000204.)

On October 23, 1997, Krisa commenced this action by filing a complaint in the Court of Common Pleas of Lackawanna County. Equitable removed the action to this Court on December 1, 1997, and eventually asserted a counterclaim charging Krisa with fraud in his claim for benefits. Following extensive discovery proceedings, Equitable moved for Summary Judgment on February 1, 1999. Oral argument on the summary judgment motions was conducted on April 30, 1999. Thereafter, counsel periodically addressed various issues in letter briefs and other supplemental memoranda of law.

On April 30, 1999, Equitable moved to strike the Eleventh and Twelfth Affirmative Defenses asserted in Krisa's response to Equitable's counterclaim. Briefing on that motion was completed by the end of June, 1999.

## II. *DISCUSSION*

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if "proof of its existence or non-existence might affect the outcome of the suit under the applicable law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

It is the moving party who bears the burden of making a threshold showing of the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 329, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has satisfied its burden, the non-moving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. If a non-moving party fails to present evidence "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is warranted. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### A. *Breach of Contract Claims*

Equitable contends that its refusal to pay total disability benefits is not a breach of contract "because Krisa is not totally disabled under the terms of the policies." (Brief in Support of Summary Judgment Motion at 4.) Equitable bases this argument on the policies' definitions of the terms "total disability" and "regular occupation." As indicated above, "total disability" is defined as the "inability due to injury or sickness to engage in the substantial and material duties of your regular occupation." The policies define "your regular occupation" as the occupation "in which you are regularly engaged for gain or profit at the time you become disabled."

Emphasizing that the policy definition of "your regular occupation" focuses on work responsibilities at the time disability commences, Equitable points to facts of record that show that, after the alleged onset of disability, Krisa continued to perform some of the functions that he described as part of the duties of his occupation at the time disability began. In particular, Equitable points to the evidence that Krisa continues to serve as firm administrator and managing attorney as well as solicitor for the Carbondale Area and Lakeland School Districts. Equitable also points to uncontradicted evidence that after filing his claim for total disability, Krisa represented a plaintiff at an underinsured motorist arbitration, served as an arbitrator at an uninsured/underinsured proceeding, participated in a suspension hearing for a school district representative, and negotiated settlements of approximately six claims without trial. (Equitable's State-

ment of Material Facts, ¶ 27a, g–j.) Asserting that a finding of total disability is warranted only if Krisa cannot perform *any* of the important duties of his occupation at the time disability commenced, Equitable insists that the record compels a conclusion that Krisa is not totally disabled.

Krisa has countered Equitable's showing by presenting evidence of a reasonable expectation that he would be entitled to total disability benefits in the event he was unable to engage in the work of a trial lawyer and by presenting competent evidence that he is not able to engage in such a professional pursuit. Specifically, Krisa has presented evidence that, at the time he purchased the policies in question, he was given illustrations that defined "your regular occupation" as the particular specialty in which the insured was engaged. He has also presented competent evidence that those selling the insurance lead him to believe that inability to engage in the specialization of trial practice would entitle him to insurance benefits. Moreover, he has presented expert opinions that he is not able to work as a trial lawyer. Specifically, Dr. Moran has opined that Krisa's hypertension disables him from high stress work, and Attorney William F. Goodrich, a seasoned trial lawyer, has opined that, given Krisa's medical restrictions, he is unable to work as a trial lawyer. (*See* Exhibits F, G and H submitted by Krisa in Opposition to Equitable's Summary Judgment Motion.) In addition, in his affidavit submitted in opposition to the summary judgment motion, Krisa states that since December 6, 1996, "he has not assumed primary responsibility for any litigation file, performed any work on any litigation file, prepared any pleadings or discovery materials, taken any depositions, attended any pretrial or settlement conferences, presented or argued any motion, prepared or 'worked up' any personal injury cases, selected a jury and/or tried any cases, or threatened to select a jury and/or try a case." (Krisa Aff. at ¶ 11.) A rational jury, if it credited the opinions of Dr.

Moran and Atty. William F. Goodrich, as well as Krisa's statements, could conclude that Krisa is not engaging in the substantial and material duties of a trial lawyer.

Under Pennsylvania law, "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997). The doctrine of reasonable expectations was explained in *Moessner* as follows:

> In most cases, 'the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations.' Courts, however, must examine 'the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured.' *As result, even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage.*

In *Tonkovic [v. State Farm Mutual Automobile Insurance Co.*, 513 Pa. 445, 521 A.2d 920 (1987) ], the Pennsylvania Supreme Court expressly applied the doctrine of reasonable expectations. In that case, the insured requested a specific type of insurance coverage and the insurance carrier failed to honor that request, unilaterally limiting the scope of coverage in a conspicuous provision in the policy. The Supreme Court concluded that regardless of the ambiguity or lack thereof inherent in an insurance policy, courts should insure that the insured's 'reasonable expectations are fulfilled.' Thus, the court held:

> When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. *The burden is not on the insured to read the policy to discover such changes, or not read it at his peril.* 121 F.3d at 903 [Emphasis added.]

The Third Circuit in *Moessner* concluded that issues of fact existed as to whether the insured had a reasonable expectation of coverage notwithstanding an unambiguous policy exclusion.

▮ In this case, Krisa has tendered sufficient evidence to warrant submission of the reasonable expectations question to the jury. The fact that Krisa is an attorney and may have represented a client in a claim for disability insurance against an insurance company do not compel a contrary result. As explained in *Moessner*, the fact that the insured is "sophisticated" is simply a factor that may be taken into account in applying the reasonable expectations doctrine, but does not preclude its applicability.[5] *Id.* at 904 n. 8. Moreover, as noted above, Krisa has tendered sufficient competent evidence of an inability to engage in a trial practice to warrant submission of the total disability question to the jury.

▮ Indeed, even if Krisa were limited to the definition of "regular occupation" as set forth in the Equitable policies, summary judgment would be precluded. Krisa has presented competent evidence that his labile hypertension significantly impairs his ability to practice law as he did immediately prior to his hospitalization in December of 1996. While some of the work that Krisa has performed since the alleged onset of disability has been litigation-oriented, a jury could reasonably conclude that such work is neither "substantial" nor "material" to the type of practice Krisa enjoyed before the alleged onset of disability. Moreover, as Krisa observes, "[a] jury ... may well conclude that minor activities undertaken on an isolated basis against doctor's orders do not mean that the plaintiff is not totally disabled." (Brief in Opposition to Summary Judgment Motion at 5–6.)

In sum, there are genuine issues of material fact concerning both the scope of coverage and Krisa's claimed disability. Accordingly, summary judgment on Count I of the complaint is not warranted.

### B. *Bad Faith Claim*

▮ Pennsylvania has established a statutory remedy for bad faith on the part of insurance companies. Section 8371 of title 42 Pa.C.S.A. provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorneys fees against the insurer.

The standard for assessing insurer bad faith under § 8371 was recently restated in *Keefe v. Prudential Property and Casualty Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000):

> [T]he term bad faith includes 'any frivolous or unfounded refusal to pay proceeds of a policy.' 'For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.' Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the pol-

---

**5.** It is extremely doubtful that Krisa would be regarded as a "sophisticated" insured. As noted in *Moessner*, "[a] 'sophisticated' insured is typically characterized as a large commercial enterprise that has substantial economic strength, desirability as a customer, and on understanding of insurance matters or readily available assistance in understanding and procuring insurance." *Id.* at 904 n. 8. Equitable has not tendered evidence sufficient to show that Krisa was a "sophisticated insured" as that term was defined in *Moessner*.

icy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

These two elements—absence of a reasonable basis for denying a claim under the policy and knowledge or reckless disregard of the lack of such reasonable basis—must be proven by clear and convincing evidence. *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997). Because "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case," *Anderson,* 477 U.S. at 254–55, 106 S.Ct. 2505, a proponent of a bad faith claim "must present sufficient evidence such that, if believed, a jury could find bad faith under the clear and convincing standard." *Greco v. The Paul Revere Life Ins. Co.,* No. Civ.A. 97–6317, 1999 WL 95717, *3, (E.D.Pa., Feb.12, 1999).

In this case, it is undisputed that the disability insurance policies issued to Krisa defined regular occupation as the occupation in which he was regularly engaged at the time he became disabled, and defined total disability to mean an inability to engage in the substantial and material duties of his regular occupation. It is further undisputed that Krisa returned to work as a lawyer after being hospitalized in December of 1996 and that he continued to perform duties and responsibilities that comprised more than 20% of the time that he spent in his practice prior to December of 1996, *i.e.,* office management and school district solicitorships. The disability opinion expressed in June of 1997 by Krisa's treating physician, Dr. Moran, was that Krisa was totally and permanently disabled for the purpose of being a "court room or trial attorney." (Ex. "H" to Equitable's Statement of Material Facts at Bates No. 000102.) By letter dated August 14, 1997, Equitable requested pertinent information pertaining to Mr. Krisa's

pre-disability occupation as a trial attorney, including such information as a list of the courts in which he had tried a case in the past three years, information pertaining to non-jury and jury trials, and a list of the cases on which he was designated as the attorney of record for the time period 1995 through December, 1996. *Id.* at 000194–95.

■ As noted above, it is Equitable's position that total disability is to be determined in reference to the substantial and material duties being performed by Mr. Krisa in his occupation at the onset of disability. This position is rooted in the policy language. Equitable has also provided case law support for its position that total disability requires a finding of inability to perform *any* of the insured's important occupational functions. *See Cunningham v. The Paul Revere Life Ins. Co.,* No. 3:97–0740, slip op. at 7 (M.D.Tenn., Aug. 24, 1998).[6] The information requested in the August 14, 1997 letter was plainly pertinent to a determination of the substantial and material duties being performed by Krisa as of December, 1996. While Equitable's position that the focus of the inquiry must be limited to the time frame immediately prior to the alleged onset of disability may ultimately prove unsound, it has not been shown to be unreasonable. In this regard, the threshold question for bad faith liability is not whether the insurer is correct, but whether there exists a "reasonable basis for denying benefits *under the policy.*" *Keefe,* 203 F.3d at 225 (emphasis added).

Krisa insists that the report of his insurance practices expert, John Klagholz, is sufficient to create an issue of triable fact on his bad faith claim. A careful examination of Mr. Klagholz's report reveals, however, that his assertions and opinions are not material to the question of whether Equitable had a reasonable basis for denying Krisa's claim for total disability bene-

---

6. A copy of the *Cunningham* opinion is attached as Ex. 1 to the Brief in Support of Equitable's Summary Judgment Motion.

fits. Specifically, Mr. Klagholz ignores the language of the policy defining "your regular occupation" and "total disability," and instead relies exclusively on the doctrine of reasonable expectations. Thus, for example, he asserts that if "any reasonable interpretation supports a coverage determination favoring the insured, payment must be made in order to satisfy the insured's reasonable expectations to payment of a monthly income benefit in the event of a total disability." (Klagholz Report at 5.) From this premise he goes on to argue that "Equitable is obligated to affirmatively bring forth objective information that its coverage determination is clearly correct if it is to successfully deny Mr. Krisa's submitted claim." *Id.* at 7. Claiming that Equitable has not demonstrated that its position was "clearly correct," Mr. Klagholz states that "it is my opinion that Equitable's conduct in this matter represents a significant deviation from its obligation to deal fairly, honestly and in good faith with Mr. Krisa."

Contrary to the premise of Mr. Klagholz's report, bad faith is not established if there is any reasonable interpretation that supports a coverage determination favoring the insured. Furthermore, neither Mr. Klagholz in his report nor Krisa in his briefs has cited any case that supports the proposition that bad faith is to be assessed in the context of the *insured's* reasonable expectations. On the contrary, the case law uniformly assesses bad faith in the context of the terms of the insurance policies and the nature of the investigation undertaken by the insurance company. Thus, even where a court has concluded that an insurance company was obligated under its contract to pay benefits, summary judgment has been entered in favor of the insured on a bad faith claim. *See, e.g., Kearns v. Minnesota Mutual Life Ins. Co.,* 75 F.Supp.2d 413, 421 (E.D.Pa.1999); *Lieberson v. Chubb Life Ins. Co.,* No. Civ.A. 97–5716, 1998 WL 404537, *2 (E.D.Pa., July 14, 1998).

Canvassing the law of bad faith under 42 Pa.C.S.A. § 8371 in the context of disability insurance claims, Judge Kelly recently wrote:

> Courts repeatedly have held that an insurance company's substantial, thorough investigation, based upon which the insurance company refuses to make or continue benefit payments, establishes a reasonable basis that defeats a bad faith claim. *See, e.g., Seidman v. Minnesota Mut. Life Ins. Co.,* No. 96–CV–3191, 1997 WL 597608, at *3 (E.D.Pa. Sept. 11, 1997) (finding even where some testing may have been inadequate, and physicians disagreed whether the plaintiff was still disabled, the insurance company had a reasonable basis to terminate disability benefits); *Parasco v. Pacific Indem. Co.,* 920 F.Supp. 647, 655–56 (E.D.Pa.1996) (finding a thorough investigation provided a reasonable basis); *Montgomery v. Federal Ins. Co.,* 836 F.Supp. 292, 298 (E.D.Pa.1993) (finding an insurance company's extensive investigation was sufficient to establish a reasonable basis). What these cases show is that for an insurance company to show that it had a reasonable basis, *an insurance company is not required to demonstrate its investigation yielded the correct conclusion or even that its conclusion more likely than not was accurate. The insurance company also is not required to show the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion. Rather an insurance company simply must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.*

*Cantor v. The Equitable Life Assurance Soc'y,* No. Civ.A. 97–CV–5711, 1999 WL 219786, *3 (E.D.Pa., April 12, 1999) (emphasis added).

In this case, the evidence shows that prior to the time that this action was instituted Equitable had sought to engage

in a thorough investigation, with the parameters of that investigation established by its reasonable view of the policies' coverage provisions. Medical records were obtained, Krisa was interviewed several times, and business documents were sought. The record further reveals that Equitable was attempting to continue its investigation by requesting information from Krisa when this action was brought. At that point in time, Equitable was possessed of knowledge that Krisa was still engaged in the practice of law, performing some of the activities that he had performed prior to the alleged onset of disability. This information, which was indisputably in Equitable's possession as of October, 1997, plainly provided a reasonable foundation for its withholding total disability benefit payments under Equitable's reasonable interpretation of the policies' coverage provisions. Stated otherwise, Krisa has not adduced sufficient evidence on which a jury could find under the clear and convincing standard that Equitable had acted in bad faith in not paying total disability benefits as of the time this lawsuit was brought. Accordingly, Equitable is entitled to summary judgment on Krisa's contention that Equitable's denial of his total disability claim violated the Pennsylvania Bad Faith Statute.[7]

### C. *Fraudulent and Negligent Misrepresentation Claims*

In Count III of the complaint, Krisa alleges that he was induced to purchase and/or continue to pay premiums on the disability policies on the basis of representations that "the full monthly income for total disability under the disability policies would be due and payable to plaintiff if plaintiff was unable to be actively involved in the trial of court cases...." (Complaint at ¶ 23.) Equitable contends that Krisa is unable to present evidence sufficient to establish a prima facie case of fraud.

The elements of a fraud claim are: (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker to induce the recipient to act, (4) justifiable reliance by the recipient on the misrepresentation, and (5) damage to the recipient as a proximate result of the misrepresentation. *Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Investments,* 951 F.2d 1399, 1409 (3d Cir.1991); *Sowell v. Butcher & Singer, Inc.,* 926 F.2d 289, 296 (3d Cir. 1991).

Equitable contends that Krisa cannot show justifiable reliance on the representations pertaining to the scope of coverage. In advancing this argument, Equitable relies principally on the evidence that Krisa did not read the policies in question even though he had a statutory right to reject the policies within ten (10) days of their delivery. *See* 40 P.S. § 752(A)(10).

Equitable's argument is inconsistent with the doctrine of reasonable expectations as applied by the Pennsylvania courts. As noted above, in *Tonkovic,* the Pennsylvania Supreme Court held that when an insurer issues a policy that differs from what the insured requested and paid for, *the duty is on the insurer to advise the insured of the differences.* The burden is *not* on the insured to read the policy to discover the changes. Krisa has adduced sufficient competent evidence that he rea-

---

7. It is my understanding that Krisa is also claiming bad faith in the denial of residual disability benefits. It is also my understanding that Krisa is charging bad faith in connection with how Equitable handled both his total and residual disability claims after this lawsuit was filed. Because the residual disability claim is outside the scope of Equitable's motion for summary judgment and the bad faith claims concerning the handling of the total disability and the residual disability claims after this lawsuit was brought necessarily overlap, I express no opinion on whether Krisa is entitled to a jury trial on his post-litigation bad faith claims. That is, this decision is limited to a determination that no rational juror could find by clear and convincing evidence that Equitable had acted in bad faith as of the time this lawsuit began.

sonably expected coverage in the event that he was unable to practice as a trial attorney. If a jury credits Krisa's position, his failure to have read the policies in question would not defeat justifiable reliance on the representations of those claimed to be Equitable's agents.

It has been recognized that " 'the question of justifiable reliance is most appropriately left to the jury. Reasonableness of reliance involves all of the elements of the transaction, and is rarely susceptible of summary disposition.' " *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates,* 39 F.Supp.2d 517, 534 (M.D.Pa.1999). This case does not present an exception to that general rule. Accordingly, the justifiable reliance issue is properly left for jury resolution.[8]

### D. *The UTPCPL Claims*

■ Equitable argues that summary judgment should be granted on the UTPCPL claims in Count IV of Krisa's complaint because Krisa can show no more than a refusal to pay benefits, which is not actionable under the UTPCPL. *See Leo v. State Farm Mut. Auto. Ins. Co.,* 939 F.Supp. 1186, 1193 (E.D.Pa.1996), *aff'd mem.,* 116 F.3d 468 (3d Cir.1997). In this regard, it has been recognized that only the improper performance of a contractual obligation, that is "malfeasance," is actionable under the UTPCPL, and "an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 307 (3d Cir.1995). The UTPCPL has, however, been interpreted to include "an insurer's promise to pay benefits it has no intention of paying." *Parasco v. Pacific Indemnity Co.,* 920

F.Supp. 647, 656 (E.D.Pa.1996), *citing Schroeder v. Acceleration Life Ins. Co.,* 972 F.2d 41, 46 (3d Cir.1992). The dispositive issue here, therefore, is whether the evidence adduced by Krisa concerns only a refusal to pay a claim, or encompasses such misfeasance as an insured's promise to pay benefits when it has no intention of doing so.

■ Much of what Krisa has alleged in Count IV of his complaint does indeed concern Equitable's conduct in connection with its decision to deny benefits, conduct which arguably is not actionable under the UTPCPL. *See Horowitz supra; Leo,* 939 F.Supp. at 1193. Krisa, however, has also based his UTPCPL claim on the alleged fraudulent inducement to purchase the policies in question. Such a contention would appear to fall within the ambit of a promise to pay benefits with no intention of doing so, found to be actionable in *Schroeder.* Under these circumstances, Equitable is not entitled to summary judgment on Count IV of Krisa's Complaint.

■ Equitable, however, is entitled to partial summary judgment on Count IV in that damages for anxiety, emotional distress, depression and aggravation of physical illness are not recoverable under the UTPCPL. That statute authorizes a private action by "any person who purchases or leases goods or services primarily for personal, family or household purposes and *thereby suffers any ascertainable loss of money or property, real or personal,* as a result of the use or employment by any person of a method, act or practice declared unlawful by … this act…." 73 P.S. § 201–9.2(a) (emphasis added). Relief is limited to three times the actual damages sustained, but not less than $100, plus costs, reasonable attorney fees, and

---

8. Observing that the alleged misrepresentations were made in 1985 and 1992, Equitable asserts that Krisa's fraud claims are barred by the two year statute of limitations. This argument is based upon the same premise as Equitable's justifiable reliance argument: Krisa's apparent failure to read the policies in question. Summary judgment on the statute of limitations question is not warranted for the same reasons that summary judgment on the justifiable reliance issue is inappropriate: Krisa did not have a duty to make sure that what he was promised was delivered. It also bears noting that there is at least a genuine dispute as to whether Krisa ever received the 1992 policy.

such additional relief as the court deems necessary or proper. *(Id.)* Krisa has not cited any authority that would allow the recovery of emotional distress damages under the UTPCPL. Judge Waldman of the Eastern District of Pennsylvania has ruled that emotional distress damages do not fall within the statute's authorization of recovery for "ascertainable loss of money or property...." *In re Bryant,* 111 B.R. 474, 480 (E.D.Pa.1990). I find Judge Waldman's conclusion consistent with the plain import of the UTPCPL. Because the statute requires an ascertainable loss of money or property and limits recovery to "actual damages," Krisa will not be entitled to recover emotional distress type damages under Count IV.[9]

### E. Equitable's Motion to Strike Pleadings

On April 1, 1999, Equitable filed an amended answer that included a counterclaim accusing Krisa of fraud in connection with his claim for disability benefits. Equitable requested, *inter alia,* reasonable investigation expenses, costs of suit, and attorneys' fees.

 On or about April 14, 1999, Krisa answered the counterclaim, asserting 12 affirmative defenses. Equitable has moved to strike the 11th and 12th affirmative defenses, which provide:

### ELEVENTH AFFIRMATIVE DEFENSE

The damages claimed by Equitable, including investigation costs and counsel fees, were caused by the conduct of third parties, including but not limited to the claims personnel handling Mr. Krisa's claim and the attorneys hired by Equitable, Platte Moring, Esq. and Andrew Susko, Esq. and the law firm of White and Williams, through their unreasonable handling of Mr. Krisa's claim and unreasonable handling of this litiga-

tion, including but not limited to their pursuit of a frivolous counterclaim which was withdrawn following a threat of sanctions against Equitable and Attys. Susko and Moring.

### TWELFTH AFFIRMATIVE DEFENSE

Equitable's claims are frivolous and are made in violation of Rule 11 of the Federal Rules of Civil Procedure, and plaintiff John Krisa reserves all rights under Rule 11 and under Pennsylvania's Dragonetti statute.

Rule 12(f) of the Federal Rules of Civil Procedure, in pertinent part, states:

[U]pon motion made by a party within twenty days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Pointing out that it withdrew its proposed counterclaim of fraud in the application prior to the time that the Court ruled on its motion for leave to amend its answer to include a counterclaim, Equitable argues that Krisa's reference to the proposed count of a counterclaim that was withdrawn without a court ruling does not present a valid defense, and is immaterial, impertinent and scandalous matter.

As noted above, Equitable's counterclaim seeks recovery of the investigation costs and attorneys' fees incurred in connection with this litigation. The counterclaim does not purport to exclude from recovery those investigative expenses, costs and attorneys' fees incurred in connection with development of the proffered fraud in the application claim. While Equitable's Brief in Support of its Motion to Strike contends that it is making no claim for costs and fees incurred with respect to its proffered fraud in the application cause

---

9. Krisa's UTPCPL claims are not barred by the applicable statute of limitations for the same reason that his fraud claims are not time-barred.

of action, such a limitation cannot be discerned from the counterclaim itself. Krisa was plainly entitled to assert as an affirmative defense that those fees and costs not reasonably incurred are not recoverable, even if Equitable prevails on its counterclaim. Clearly, fees and costs incurred on a withdrawn claim are arguably unreasonable. Thus, at the time the answer to the counterclaim was filed, Krisa's Eleventh Affirmative Defense did not present an insufficient defense, nor did it contain scandalous, immaterial or impertinent matter. On the contrary, the Eleventh Affirmative Defense appropriately raised the question of whether fees and costs claimed by Equitable were "reasonably" incurred. Accordingly, Equitable's motion to strike the Eleventh Affirmative Defense is without merit.[10]

The Twelfth Affirmative Defense invokes Rule 11 of the Federal Rules of Civil Procedure and the specter of a lawsuit under Pennsylvania's wrongful use of civil proceedings statute, 42 Pa.C.S.A. § 8351, popularly known as the Dragonetti Act. Rule 11, as amended, requires presentation of a motion, and not the assertion of an affirmative defense. The Dragonetti Act requires a termination of the underlying proceedings in the plaintiff's favor, see 42 Pa.C.S.A. § 831(a)(2), an event which has not occurred. Moreover, Krisa's Twelfth Affirmative Defense does not state a claim under the Dragonetti Act, but merely "reserves" the right to do so. There is neither a need nor a right to express such a "reservation" in an affirmative defense. Thus, the Twelfth Affirmative Defense is indeed subject to being stricken.

---

10. Krisa plainly has the right to contest the reasonableness of the fees and costs claimed to have been incurred by Equitable in connection with this matter. Even if the counterclaim had made clear that Equitable was not seeking to recover fees and costs incurred in connection with the abandoned claim of fraud in the application, Krisa has the right to raise the issue for purposes of attempting to show that the costs and fees claimed by Equitable are not reasonable under the circumstances. That is, Krisa is entitled to argue that the pursuit of the abandoned fraud in the application claim is typical of Equitable's excesses in defending this action.

## III. CONCLUSION

For all the foregoing reasons, Equitable's motion for summary judgment will be denied with the exception of Krisa's claim that Equitable acted in bad faith in refusing to pay Krisa's claim for total disability benefits as of the time this lawsuit was brought and his claim for emotional distress damages under the UTPCPL. Equitable's motion to strike will be denied as to the Eleventh Affirmative Defense to its counterclaim, but granted as to the Twelfth Affirmative Defense. An appropriate Order is attached.

### *ORDER*

NOW, THIS ___ DAY OF APRIL, 2000, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The motion for summary judgment of The Equitable Life Assurance Society (Dkt. Entry 74) is **GRANTED IN PART AND DENIED IN PART.** Defendant is granted summary judgment to the extent that plaintiff claims bad faith in the refusal to pay plaintiff's claim for total disability insurance benefits as of the time this action was filed and to the extent that plaintiff seeks emotional distress damages for alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection law. In all other respects, defendant's motion for summary judgment is *DENIED.*

2. Defendant's motion to strike (Dkt. Entry 103) is **GRANTED IN PART AND DENIED IN PART.** The Twelfth Affirmative Defense asserted in the answer to defendant's counterclaim is **STRICKEN.**

3. A status conference shall be conducted on **Wednesday, May 3, 2000 at 8:30**

a.m. in Room 402 of the William J. Nealon Federal Building & U.S. Courthouse, 235 N. Washington Avenue, Scranton, Pennsylvania.