**Robert E. SCHROEDER, on behalf of himself and all others similarly situated, Appellant,**

v.

**ACCELERATION LIFE INSURANCE COMPANY OF PENNSYLVANIA.**

**No. 91–3518.**

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1992.

Decided July 31, 1992.

Michael P. Malakoff (argued), Berger, Kapetan, Malakoff & Meyers, Pittsburgh, Pa., for appellant.

Anthony F. Jeselnik (argued), Pittsburgh, Pa., for appellee.

Before: BECKER, ROTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Robert Schroeder sued Acceleration Life Insurance Company of Pennsylvania for breach of contract, Unfair Trade Practices and RICO violations on a credit disability insurance policy. The district court granted summary judgment in favor of Acceleration. The central premise of the court's judgment was its conclusion that Acceleration had not breached its contract with Schroeder. From that premise, the court reasoned that, absent a breach of contract, there could not be fraud under the Pennsylvania Unfair Trade Practices and Consumer Protection Law; and absent a breach of contract, there was no evidence of RICO activities. We disagree. The central premise of our judgment is our conclusion that the district court was bound by a prior state court judgment, holding that Acceleration had indeed breached its contract with Schroeder. From that premise, we reason that the district court was incorrect to base its ruling on the Unfair Trade Practices and RICO claims on the erroneous finding that there was no breach of contract. We will, therefore, vacate the court's grant of summary judgment in favor of Acceleration.

Jurisdiction in the trial court was proper based on 28 U.S.C. § 1331. Jurisdiction on appeal is proper based on 28 U.S.C. § 1291. Our review of the district court's grant of summary judgment is plenary. *Blakesley v. Wolford*, 789 F.2d 236 (3d Cir.1986).

### I

On January 11, 1982, Robert Schroeder obtained a car loan from First Seneca Bank and purchased credit disability insurance from Acceleration Life Insurance Company of Pennsylvania to cover the loan. The monthly installments on the loan started on February 25, 1982 and were scheduled to end on January 11, 1986.

Under the policy, in the event Schroeder became disabled, Acceleration would pay First Seneca Bank a monthly benefit in order to reduce or extinguish Schroeder's loan during the period of covered disability. Any excess disability benefits were to be paid to Schroeder or his estate. Additionally, the certificate of insurance stated that Schroeder's insurance would end on the "earliest of the following dates: the date the indebtedness is discharged, whether by payment, renewal, refinancing, or otherwise." Finally, the certificate contained a "non-prejudice" clause which provided that "any termination of this insurance prior to the maturity date by prepayment, renewal, refinancing, or otherwise, shall be without prejudice to any claim originating prior to termination."

In October 1982, the Pennsylvania Insurance Department informed Acceleration that the non-prejudice clause of its insurance contracts, permitting Acceleration to pay disability benefits after termination of the underlying loan, violated the department's regulations. The department ordered Acceleration to delete from its insurance contracts the non-prejudice clause and to cease the payment of disability benefits immediately upon termination of the underlying loan. In an internal memo, Acceleration explained to its employees that it

would have to change the wording of its insurance certificate. Acceleration did not, however, inform Schroeder of the change.

Schroeder became disabled on April 6, 1983 but continued to make payments on the car loan to First Seneca Bank. Schroeder did not notify Acceleration of his disability claim until April 18, 1984. At the time of his disability Schroeder had 34 payments remaining on his car loan. On August 22, 1984, Acceleration began payments to First Seneca on Schroeder's car loan retroactive to April 6, 1983, the date of Schroeder's disability. By making these retroactive payments Acceleration caused the loan to be fully satisfied in 25 rather than 34 payments. The 9 payments difference between 34 and 25 totalled $2,023.87.

Schroeder wrote to Acceleration, claiming that he was entitled to the $2,023.87. Acceleration refused and quoted the clause of the insurance contract which provided that the insurance would end on the "earliest of the following dates: the date the indebtedness is completely discharged, whether by payment, renewal, refinancing or otherwise."

On April 16, 1986 Schroeder filed the first of two class actions against Acceleration in the Pennsylvania Court of Common Pleas. The first class action claimed solely that Acceleration had breached its contract with Schroeder and thousands of other insureds similarly situated. Specifically, Schroeder read the non-prejudice clause of the insurance certificate to mean that Acceleration would pay monthly benefits until the scheduled maturity date, or that Acceleration would reimburse an insured for any duplicate payments made by the insured during the period of disability. Acceleration disagreed and interpreted the policy as stating that monthly benefits would terminate on the earlier of the scheduled maturity date of the loan, or the actual date when the loan was satisfied.

On September 17, 1987, Schroeder filed a second class action in state court, this time alleging that Acceleration had committed fraud against Schroeder and other insureds similarly situated in violation of the Racketeer Influenced and Corrupt Organizations

Act (RICO), 18 U.S.C. §§ 1961 *et seq.* and the Pennsylvania Unfair Trade Practice and Consumer Protection Law, 73 Pa.Stat. Ann. §§ 201-1, *et seq* (Purdon Supp.1992). Schroeder claimed that Acceleration had defrauded its insureds using three different schemes. First, Acceleration promised its insureds to pay them excess benefits upon early termination of their loans, when in fact, it never intended to do so. Second, Acceleration paid less benefits than it was required to pay by "secretly calculating benefits on a daily basis rather than a monthly basis." Finally, Acceleration terminated coverage of its insureds before the scheduled date for the final payment of the underlying loan.

Acceleration immediately removed Schroeder's fraud claims to the federal district court for the Western District of Pennsylvania. By order of the district court Schroeder later amended his complaint to include a breach of contract claim. The breach of contract claim in the federal complaint was identical to the one asserted in the state court action. On October 11, 1988, Acceleration moved for summary judgment on all of Schroeder's claims in the district court.

Meanwhile, the Pennsylvania Court of Common Pleas certified the plaintiff class on the contract claim and, on August 23, 1989, granted judgment in favor of Schroeder and the class plaintiffs. Acceleration appealed the judgment. On March 5, 1990, the district court stayed the fraud claims pending the outcome of the appeal of the state court contract claim.

On November 14, 1990, the Pennsylvania Superior Court affirmed the judgment on the contract claim. The court agreed with Schroeder's interpretation of the insurance certificate. The court held that Acceleration had breached its contract, and that it was required to pay Schroeder and the class plaintiffs monthly benefits "from the date of the incurrence of disability until the scheduled maturity date of the loan." Acceleration filed a petition for Allowance of Appeal to the Pennsylvania Supreme Court. The Pennsylvania Supreme Court denied the petition.

On February 6, 1991, the federal district court vacated its earlier stay on the fraud claims after Schroeder notified the court that the Pennsylvania Superior Court had affirmed the judgment of the Court of Common Pleas on the contract claim. The district court had earlier denied Schroeder's motion for class certification, and had pending before it Schroeder's motion for reconsideration of the class denial. On July 10, 1991, the district court granted summary judgment in favor of Acceleration on the contract, RICO and Unfair Trade Practice claims. The court also ruled that as a result of the grant of summary judgment in favor of Acceleration, Schroeder's motion for reconsideration of the class denial was moot. Schroeder now appeals.

## II

The grant of summary judgment by the district court in favor of Acceleration turns on the court's conclusion that Acceleration had not breached its contract when it refused to pay Schroeder the $2,023.87 in excess benefits on termination of Schroeder's loan from First Seneca Bank. Absent a contract breach, according to the district court, there could not be fraud under the Pennsylvania Unfair Trade Practices and Consumer Protection Act. And, absent a contract breach, there were insufficient facts to show that Acceleration had engaged in a pattern of racketeering activities in violation of RICO.

In reaching its decision, however, the district court seemed not to have taken notice of the earlier judgment by the Pennsylvania Court of Common Pleas—affirmed by the Superior Court—that Acceleration had breached its contract, and that Acceleration was required to pay Schroeder and the class plaintiffs the excess monthly benefits.

## A

■ Title 28 U.S.C. § 1738 (1991) provides, among other things, that the judicial proceedings of any state shall have the same full faith and credit in every court of the United States as they have in the courts of such state from which the judicial proceedings are taken. The Supreme Court has interpreted § 1738 to mean that federal courts must give preclusive effect to state court judgments whenever the courts of the states from which the judgments emerged would do so. *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

■ Pennsylvania follows the rule of collateral estoppel that when a court of competent jurisdiction has determined a litigated cause on its merits, judgment entered and not reversed on appeal is, as between the parties to the action and their privies, final and conclusive with regard to every fact which might properly be considered in reaching a judicial determination, and with regard to all questions of law adjudged as those facts and points of law relate directly to the cause of action. *Goldstein v. Ahrens*, 379 Pa. 330, 108 A.2d 693 (1954).

■ For the doctrine of collateral estoppel to apply under Pennsylvania law four requirements must be satisfied: 1) the issue decided in the prior adjudication must be identical with the one presented in the later action; 2) there must have been a final judgment on the merits; 3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication; and 4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication. *Kelly v. Warminster Township. Bd. of Supervisors*, 512 F.Supp. 658 (E.D.Pa.1981), *aff'd without op.* 681 F.2d 806 (3d Cir.1982), *cert. denied* 459 U.S. 834, 103 S.Ct. 76, 74 L.Ed.2d 74 (1982).

■ All four requirements have been satisfied here with respect to the breach of contract issue. Acceleration has conceded that the breach of contract claim presented in the district court was identical to the one adjudged in state court. There was a final judgment on the merits in state court that Acceleration had breached its contract with Schroeder and the class plaintiffs. Acceleration was a party to the state action. And, there is no indication that Acceler-

ation did not have a full and fair opportunity to litigate the issue in state court. Thus, the judgment of the Court of Common Pleas that Acceleration had breached its contract with Schroeder must be given preclusive effect. The district court erred in not doing so.

### B

Turning to the Pennsylvania Unfair Trade Practices claim, the district court reasoned that, since it found no breach of contract, there could be no fraud. In so holding, the district court erred for two reasons. First, the court was bound by the prior state court judgment to find that Acceleration had breached its contract with Schroeder. Thus, inasmuch as the court erred in finding there was no breach of contract, it also erred in ruling there was no fraud. Second, we believe that Schroeder presented sufficient evidence to survive a motion for summary judgment on the Unfair Trade Practices claim.

■■■ The Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL) prohibits a seller of goods and services from engaging in any "fraudulent conduct which creates the likelihood of confusion or misunderstanding." 73 Pa.Stat. Ann. § 201–2(4)(xvii) (Purdon Supp.1992). Pennsylvania courts have interpreted that section broadly to cover a wide variety of fraudulent acts. *See, Wright v. North American Life Assur. Co.*, 372 Pa.Super. 272, 539 A.2d 434 (1988); *Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427 (1986), *appeal denied*, 516 Pa. 635, 533 A.2d 93 (1987); *See also, Brownell v. State Farm Mutual Ins. Co.*, 757 F.Supp. 526 (E.D.Pa. 1991). Schroeder claims that Acceleration defrauded its insureds in several ways: by promising them benefits it never intended to pay, by calculating benefits on a daily rather than on a monthly basis and by terminating coverage prematurely. For purposes of summary judgment, Schroeder's allegations and accompanying evidence are sufficient to state a claim under the CPL.

### C

As to Schroeder's RICO claims, the district court reasoned that they were dependent on the breach of contract claims. Having earlier found no breach of contract, the court held that Schroeder had failed to show that Acceleration engaged in any acts of racketeering, and that the acts of frauds claimed by Schroeder, even if true, do not constitute a pattern of racketeering activities. We believe that the court erred on the RICO claims as well. For purposes of resisting a motion for summary judgment, Schroeder has presented sufficient facts to show that Acceleration engaged in acts of racketeering. Moreover, the acts of racketeering alleged by Schroeder, if proven to be true, amount to a pattern of racketeering activities sufficient to support Schroeder's RICO claims.

■■■ RICO imposes civil liability on a defendant if plaintiff is able to show that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activities. 18 U.S.C. § 1962(c) (1988); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Racketeering activity is defined in RICO in part as "any act or threat involving" specified state law crimes, and any "act" indictable under various specified federal offenses, including mail fraud. 18 U.S.C. § 1961(1). To prove a pattern of racketeering activities a plaintiff must show that defendant engaged in at least two of the predicate acts of racketeering defined in § 1961(1). In addition, plaintiff must show that the acts "are related and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). The racketeering acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901. The racketeering acts pose a threat of continued criminal activity if they "are a regular way of conducting defendant's ongoing legitimate

**47**

business or of conducting an ongoing and 'legitimate RICO enterprise'." *Id.* at 242, 109 S.Ct. at 2902.

[10, 11] Under the foregoing definition, we believe that Schroeder has shown, for purposes of resisting Acceleration's motion for summary judgment, that Acceleration has engaged in acts of racketeering under 18 U.S.C. § 1961(1), and that those acts constitute a pattern of racketeering activities in violation of 18 U.S.C. § 1962(c), in view of the large number of policies written by Acceleration and the length of time over which they were written. As to whether Acceleration's "benefits reduction schemes" constitute predicate acts of racketeering, Schroeder alleges that Acceleration used the mails to defraud its insureds by promising them benefits it never intended to pay. In addition, Schroeder claims that Acceleration used various schemes to reduce the benefits due insureds under their policy. As to whether these acts amount to a pattern of racketeering activities, we believe that Schroeder has shown that these acts have "the same or similar purposes, results, participants, victims, or methods of commission," and that they are a regular way of conducting [Acceleration's] ongoing legitimate business." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 240–242, 109 S.Ct. 2893, 2901–2902, 106 L.Ed.2d 195 (1987).[1]

### D

Finally, on the issue of class certification, the district court initially denied Schroeder's motion to certify the plaintiff class and, later, had pending before it Schroeder's motion for reconsideration of the class denial. Upon granting summary judgment in favor of Acceleration, the court held that Schroeder's motion was moot. Given our decision to vacate the grant of summary judgment, we will leave

it to the trial court to reconsider Schroeder's motion for class certification.

### III

For the foregoing reasons we will vacate the district court's grant of summary judgment in favor of Acceleration on Schroeder's contract, Unfair Trade Practices and RICO claims, and we will remand the case to the district court for further proceedings consistent with this opinion.

---

1. Recently, this court has held that the "person" charged with the RICO violation cannot be the same entity as the "enterprise". *Glessner v. Kenny,* 952 F.2d 702, 710 (3d Cir.1991); *Brittingham v. Mobil Corp.,* 943 F.2d 297, 300 (3d Cir. 1991). Here, because the parties did not address the issue, and because the district court

was not given the opportunity to consider it, we do not reach the question of whether Schroeder has made a sufficient allegation that Acceleration was conducting an enterprise distinct from itself in carrying out the alleged racketeering activities.