**NICK POURZAL, Plaintiff**

v.

**KROLL-O'GARA COMPANY d/b/a KROLL ASSOCIATES,
JAMES R. MURRAY, and DAVID M. SHAPIRO, Defendants**

POURZAL v. KROLL-O'GARA CO.

Civ. No. 2001-141

District Court of the Virgin Islands

Division of St. Thomas and St. John

June 7, 2005

634

*For plaintiff*: A. JEFFREY WEISS, ESQ., St. Thomas, U.S.V.I.

*For defendants*: DOUGLAS L. CAPDEVILLE, ESQ., CHETEMA M. LUCAS, ESQ., St. Croix, U.S.V.I.

GOMEZ, *District Judge*

## MEMORANDUM

(June 7, 2005)

Before the Court is the defendants' motion for partial summary judgment.[1] The sole issue presented in the defendants' motion is whether the plaintiff is collaterally estopped from asserting all but one of the claims in his complaint because the issues surrounding those claims were raised and decided in a prior arbitration proceeding. For the reasons set forth below, the Court will grant the defendants' motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. The Parties and The Complaint

Plaintiff Nick Pourzal initiated this action [the "court proceeding"] against (1) Kroll-O'Gara Company d/b/a Kroll Associates ["Kroll"], (2) James R. Murray, and (3) David M. Shapiro, as a result of Pourzal's termination as general manager of the Marriot Frenchman's Reef Hotel on St. Thomas ["the Marriot"]. Pourzal was employed as the general manager of the Marriot by Prime Hospitality Corporation ["Prime"], a hotel management company. (Compl. at 2; Defs.' Mot. for Summ. J. at 2; hereinafter "Defs.' Mot. at ___.")

---

[1] The defendants seek summary judgment on all counts of the pending complaint with the exception of the defamation claim asserted in Count VI. (Defs.' Mot. for Summ. J. at 6.)

[2] The parties have differing views as to the facts and their relevance to this dispute. Notwithstanding their differing opinions, the Court has outlined the material facts in Part I.

Prime hired Kroll to investigate alleged wrongdoings by Pourzal during his tenure as general manager.[3] Murray and Shapiro are employees of Kroll, a forensic accounting firm. (Compl. at 2.) According to the general allegations stated in the complaint, on August 9, 1999, Murray and Shapiro, accompanied by Prime officials, forcibly entered Pourzal's office at the Marriot. (Compl. at 2.) Murray and Shapiro allegedly confronted Pourzal inside his office, acted in a "menacing manner" in an attempt to intimidate Pourzal, took possession of Pourzal's briefcases and papers, and tampered with Pourzal's personal computer files. (*Id.* at 2-3.) The complaint also alleges that the defendants published false and defamatory material about Pourzal in an August 25, 1999, letter forwarded to Prime's general counsel, Prime's law firm, and an individual named Peter Hernandez. (*Id.* at 4.)

Based on these general allegations, the complaint sets forth seven counts against the defendants. Count I alleges assault, Count II alleges intentional and negligent infliction of emotional distress, Count III sets forth a conversion claim, Count IV alleges trespass, Count V alleges invasion of privacy, Count VI alleges defamation, and Count VII requests damages for *prima facie* tort.

## B. Pourzal's Arbitration With Prime

Prior to initiating the court proceeding, Pourzal filed a demand for Arbitration with the American Arbitration Association [the "arbitration proceeding"].[4] As described in more detail in Part III below, the claims against Prime in the arbitration proceeding were substantially the same as the claims against the defendants in this court proceeding. (Plt.'s Opp'n, Ex. 5; hereinafter "Opp'n at ___.") Only Prime was named as a respondent in the arbitration proceeding. (*Id.*) However, in describing the events that took place on August 9, 1999, Pourzal alleged that certain

---

[3] The Court notes that the parties dispute precisely who hired Kroll. The plaintiff claims Kroll was hired by Prime's law firm, Willkie, Farr & Gallager. (Plt.'s Opp'n. at 3.) Kroll claims it was hired directly by Prime. (Defs.' Mot. at 2, Ex. B.) Even if the Court views the facts in the plaintiffs' favor and assumes Kroll was hired by Willkie, Farr & Gallager at Prime's request, this assumed fact does not affect the Court's decision.

[4] On February 28, 2000, Pourzal amended his initial demand, and that amended demand was the document upon which the arbitration was based. Thus, for purposes of this analysis, the Court looks only to Pourzal's February 28, 2000, amended demand for arbitration. For the sake of convenience, the Court will refer to this document as Pourzal's demand for arbitration, rather than his amended demand for arbitration.

"security personnel" participated in the tortious conduct for which Pourzal sought relief. (Opp'n, Ex. 5 at 4.) Importantly, in response to an interrogatory propounded by the defendants in these court proceedings, Pourzal admitted that the unnamed security personnel referred to in the arbitration proceeding were the defendants in this action—Kroll, Murray, and Shapiro.[5] (Defs.' Mot., Ex. G.)

The arbitration proceedings were extensive, consisting of discovery, motion practice, and a fifteen day hearing on the merits. (Opp'n at 5-7; Defs.' Mot. at 4-5.) In his interim award, the arbitrator found for Pourzal on his breach of contract and intentional infliction of emotional distress claims, but ruled against Pourzal on the other tort claims alleged in his demand for arbitration.[6] (Defs.' Mot., Ex. E; Opp'n at 6.) On March 28,

---

[5] The interrogatory and its accompanying response were as follows:

Interrogatory No. 18: Please identify who the "independent security personnel" were that you referred to in paragraph 10 of your Amended Demand for Arbitration with PRIME, Inc.

Answer to Interrogatory No. 18: Defendants Kroll, Murray, and Shapiro; and Charmaxne Rafael.

(Defs.' Mot., Ex. G.)

[6] The substantive portion of the arbitrator's interim award stated:

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement between the parties and the Rules of the American Arbitration Association, having been duly sworn, and having duly heard the proofs and allegations of the Parties, hereby do find and render this Interim Award. The termination of Claimant by Respondent was without sufficient cause and therefore was [sic] violation of the terms of the employment contract of Claimant. Therefore, Respondent did breach its contract with Claimant I further find from the evidence that the circumstances surrounding the notification of the termination of Claimant by Respondent to Claimant at Frenchman's Reef on August 9, 1999, were such that Respondent did commit the tort of Intentional Infliction of Emotional Distress Thereby I hereby AWARD as follows: On the various Claims and Counterclaims, I find for Claimant Pourzal and against Respondent on his (1) Breach of Contract and (2) Intentional Infliction of Emotional Distress Claims I find for Claimant Pourzal and against Respondent on all of the Counterclaims of Respondent. As damages for Breach of Contract, I AWARD, and Respondent shall pay, to Nick Pourzal the Sum of FOUR MILLION SEVENTY EIGHT THOUSAND FIVE HUNDRED FIFTY-FIVE DOLLARS AND SIXTY CENTS ($4,078,555.60). In addition, Respondent shall forthwith restore to Claimant the Stock Options stripped from Claimant as a result of its improper termination of Claimant on August 7, 1999 As damages for Intentional Infliction of Emotional Distress, I AWARD, and Respondent shall pay, to Nick Pourzal the further sum of ONE HUNDRED THOUSAND DOLLARS AND NO CENTS ($100,000.00). Accordingly, RESPONDENT shall pay to

2002, the arbitrator issued his final award, which affirmed his earlier decision and awarded Pourzal certain costs. (*Id.*, Ex. F.) The final award also specifically provided: "All claims not expressly granted herein are hereby denied. This Award is in settlement of all claims presented to this arbitration." (*Id.*)

## II. STANDARD OF REVIEW

The defendants have moved for partial summary judgment, requesting that the Court rule they are entitled to judgment as a matter of law. Rule 56 of the Federal Rules of Civil Procedure states that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). The United States Court of Appeals for the Third Circuit has explained the summary judgment determination as follows:

> When deciding a motion for summary judgment ... a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations. ... Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.

*Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992).

Although the Court must view all facts and inferences in the light most favorable to the non-moving party, it is not required to accept claims that are not genuine or based on mere speculation. As the Court of Appeals has explained, the summary judgment standard "does not require a court to turn a blind eye to the weight of the evidence; the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc.*, 974 F.2d at 1363 (internal quotations and citations omitted).

---

Claimant the total Sum of FOUR MILLION ONE HUNDRED SEVENTY EIGHT THOUSAND FIVE HUNDRED FIFTY FIVE AND 60/100 DOLLARS ($4,178,555.60) as Damages. The prayer of Claimant for Attorney Fees is denied.

(Defs.' Mot., Ex. E; Opp'n at 6.)

## III. ANALYSIS

 The defendants argue they are entitled to partial summary judgment under the doctrine of collateral estoppel because the claims in Pourzal's complaint, except for Count VI's defamation claim, may not be asserted in this litigation, as they were determined in arbitration.[7] The doctrine of collateral estoppel prevents parties from litigating again the same issues when a "court" of competent jurisdiction has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties and their privies. *See Schroeder v. Acceleration Life Ins. Co.*, 972 F.2d 41, 45 (3d Cir. 1992). This doctrine ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979). Importantly, arbitration proceedings and their findings are considered final judgments for the purposes of collateral estoppel. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 84 (1982) ("[A] valid and final award by arbitration has the same effects ... as a judgment of a court.").

 The United States Court of Appeals for the Third Circuit has identified the following five requirements that must be satisfied in order to apply the doctrine of collateral estoppel to bar a potential claim:

---

[7] The doctrine of collateral estoppel, also known as issue preclusion, is often confused with *res judicata,* also known as claim preclusion. "Claim preclusion, otherwise referred to as *res judicata,* gives dispositive effect to a prior judgment if the particular issue, albeit not litigated in the prior action, could have been raised." *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1070 (3d Cir. 1990). "On the other hand, issue preclusion, referred to as collateral estoppel, bars relitigation only of an issue identical to that adjudicated in the prior action." *Id.*

Although the terms collateral estoppel (issue preclusion) and *res judicata* (claim preclusion) represent distinct concepts, the defendants have used them interchangeably in their motion. For example, the defendants erroneously state, "Plaintiff is precluded from litigating the claims filed in this case, with the exception of Count VI, defamation, based on the grounds of issue preclusion, commonly known as *res judicata.*" (Defs.' Mot. at 6.) Despite this misuse of the term *res judicata,* it is clear from the substance of the defendants' arguments, including the case law upon which they rely, that they have entirely based their motion on the concept of issue preclusion, also known as collateral estoppel.

(1) the issue decided in the prior adjudication must be identical with the one presented in the later action;

(2) there must have been a final judgment on the merits;

(3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication;

(4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication; and

(5) the determination of an issue in the prior case must have been essential to the previous judgment.

*See Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 204 (3d Cir. 2004); *Witkowski v Welch*, 173 F.3d 192, 199, 203 n.15 (3d Cir. 1999); *Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency*, 126 F.3d 461, 474, 37 V.I. 526 (3d Cir. 1997); *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995).[8] The Court will address each requirement individually.

## A. Requirement One: Identity of the Issues

The first criteria for application of the doctrine of collateral estoppel requires that the issues decided in the Pourzal-Prime arbitration proceeding be identical to the issues raised in this litigation. The Third Circuit Court of Appeals' decision in *Witkowski v. Welch* is instructive on the meaning of this requirement. 173 F.3d 192 (3d Cir. 1999). In *Witkowski*, the Court of Appeals reviewed the district court's ruling that the plaintiffs were collaterally estopped from asserting a fraud claim against the defendant because the plaintiffs previously asserted issues regarding that fraud claim in an arbitration proceeding with the prior holder of the defendant's interest. *Id.* at 194-98. In affirming the district

---

[8] The Court notes that this list of factors sometimes varies. *Compare Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir 1999), *with Raytech Corp v. White*, 54 F.3d 187, 190 (3d Cir. 1995). In *Nitkowski*, the Third Circuit noted that the fifth factor — i.e. that the determination of the issue in the prior matter must have been essential to the judgment — was sometimes included in the analysis of the first factor, because "the identical issue must have been necessary to final judgment on the merits" 173 F.3d at 203 n.15. The Court will analyze this fifth factor separately for the sake of clarity, and because the Third Circuit has often also analyzed it independently of the first factor *See, e.g., Hawksbill Sea Turtle v Federal Emergency Mgmt Agency*, 126 F.3d 461, 474, 37 V.I. 526 (3d Cir 1997) (noting that one of the factors courts consider in evaluating a collateral estoppel claim is whether the previous determination was necessary to the decision).

court's decision, the Court of Appeals held that the identity of issues requirement was met because the issues asserted at the arbitration proceeding "were in substance the same" as the issues the plaintiffs were once again litigating in the court proceeding. *Id.* at 203.

The *Witkowski* Court reached its holding by making a practical assessment of what issues were raised at the arbitration proceeding. This practical assessment included "a plain reading" of the plaintiffs' complaint, "an understanding of how the issues got to arbitration," and the evidence in the record. *Id.* at 201. Importantly, the Court of Appeals did not require a detailed arbitration decision or an exact overlap in claims to conclude that the same issues were raised in both proceedings:

> The arbitrator's award was not a model of clarity as to what was and was not decided. Yet, the framing of the issues before the arbitrator and the record created during such proceedings inform this Court's analysis of what the arbitrator's ultimate award means. <u>Such an award was not created in a vacuum; neither can it be interpreted in one.</u>
>
> ... Even if there was not a precise identity of the "causes of action" asserted, it would be of no legal consequence; there is no such requirement for the application of issue preclusion. Only the issues need to be the same.

*Id.* at 202-03 (emphasis added).

The issues raised and decided in Pourzal's arbitration center around Pourzal's alleged maltreatment on or about August 9, 1999, at the hands of Prime and its agents, including the defendants named in this lawsuit. These are the same issues at the center of this action, which Pourzal seeks to re-litigate against the defendants. The Court is well aware that the factual background for the arbitrator's award, though not detailed, was not "created in a vacuum." *Id.* at 202. Indeed, claims for assault, intentional and negligent infliction of emotional distress, conversion, trespass, invasion of privacy, and prima facie tort are alleged in Pourzal's complaint, just as they were in his demand for arbitration. (Compl. at 5-8; Opp'n, Ex. 5.) Moreover, Pourzal's complaint mirrors his demand for arbitration in alleging that on August 9, 1999, the defendants entered his office, engaged in "outrageous misconduct," and confiscated his property. (*Compare* Defs.' Mot., Ex. B at 4, 6-9, with Compl. at 2-5.)

■ As in *Witkowski,* it would be helpful if the arbitrator had more explicitly enunciated the grounds for his decision. Nevertheless, the record before the Court is sufficient to establish that the arbitrator considered the defendants' actions in determining Prime's liability. This conclusion is supported by: 1) the fact that both the claims in this action and the arbitration claims center around the defendants' allegedly tortious acts of August 9, 1999; 2) Pourzal's admission that the unnamed agents in the arbitration proceeding who allegedly assaulted him are the defendants in this court proceeding; and 3) the fact that the arbitrator's all-encompassing decision expressly resolved "all claims presented [for] arbitration." (Defs.' Mot., Ex. F (emphasis added).)

Contrary to Pourzal's arguments, this Court does not need more precise information from the arbitrator to reach the obvious conclusion that the issues he asserts in this litigation are "'in substance the same'" as the ones he presented at arbitration. *Witkowski,* 173 F.3d at 203 (quoting *Raytech Corp.,* 54 F.3d at 192-93). Accordingly, the identity of issues requirement is satisfied in this case.

## B. Requirement Two: Final Judgment on the Merits

■ The second requirement to establish a claim of collateral estoppel demands that the prior proceeding resulted in a final judgment on the merits. The record is clear that Pourzal obtained a final decision in his arbitration proceedings with Prime. Under Virgin Islands law, arbitration awards are considered final judgments. *See United Indus. Workers, etc. v. Government of V.I.,* 792 F. Supp. 420, 429 n.21 (D.V.I. 1992) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 84 for the proposition that the respect afforded to arbitration awards in other jurisdictions for preclusion purposes should also apply to arbitration awards in the Virgin Islands). As such, the defendants have satisfied the second requirement for collateral estoppel.

## C. Requirement Three: Party At the Prior Proceeding

■ The third requirement for Pourzal to be collaterally estopped from asserting claims against the defendants is that the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication. Both parties have focused their arguments on whether the defendants in this action were in privity with Prime at the time of the arbitration. However, the defendants are not the

party against whom collateral estoppel is being asserted. Rather, it is the defendants who seek to assert collateral estoppel against Pourzal, so as to preclude all but one of the claims in his complaint.

The *Witkowski* case is again instructive. In *Witkowski*, as in this case, the plaintiffs participated in the prior arbitration proceeding, but the defendant did not. 173 F.3d at 200. Under these circumstances, the *Witkowski* Court held that the third requirement had been satisfied because the plaintiffs were a party to the arbitration proceeding. The *Witkowski* Court also noted that the fact that the defendant was not party to the arbitration proceeding "is of no consequence to the application of collateral estoppel." *Id.* at 200 & n.10; *see also Dici v. Pennsylvania,* 91 F.3d 542, 548 (3d Cir. 1996) (finding "no dispute" that the third criteria for collateral estoppel was satisfied because plaintiff, against whom the doctrine was being asserted, was a party to the prior proceedings); *Schroeder v. Acceleration Life Ins. Co.,* 972 F.2d 41, 45-46 (1992) (same). Given that Pourzal was a party to the arbitration proceeding, the third collateral estoppel requirement is satisfied.

## D. Requirement Four: Full and Fair Opportunity to Litigate Issue in Prior Proceeding

█ The fourth collateral estoppel requirement demands that the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication. The record is clear that the arbitration proceedings afforded Pourzal a full and fair opportunity to address the issues raised in his demand for arbitration. The Third Circuit Court of Appeals has stated that "[a] party does not have an opportunity for a full and fair hearing when 'procedures fall below the minimum requirements of due process as defined by federal law.'" *Witkowski v. Welch,* 173 F.3d 192, 205 (3d Cir. 1999) (quoting *Bradley v. Pittsburgh Bd. of Ed.,* 913 F.2d 1064, 1074 (3d Cir. 1990)). The extensive arbitration proceedings here, which Pourzal admits included discovery and a fifteen day hearing before a neutral adjudicator, did not fall below that standard. (Opp'n. at 5-6.) Accordingly, the fourth element of collateral estoppel has been established in this case.

## E. Requirement Five: Essentialness of the Determination of the Issue to the Prior Judgment

Finally, for the doctrine of collateral estoppel to apply, the determination of the issues sought to be precluded must have been "essential" to the previous judgment. *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 204 (3d Cir. 2004). Pourzal argues that this requirement has not been satisfied because the arbitrator could have concluded the defendants were independent contractors. (Opp'n at 20.) As such, Pourzal asserts, the arbitrator's decision did not necessarily reach the defendants and therefore his decision was not "essential" to the issue of their liability. (*Id.* at 20.)

■ Pourzal misstates the standard for determining whether a ruling was essential or necessary to the prior adjudicator's ruling. The inquiry is not on whether any scenario can be envisioned upon which the prior adjudicator did not have to address the issue. Instead, the focus is on what was actually raised and decided at the prior proceeding, and whether the adjudicator confronted and decided the question or merely remarked on it in dicta. The Court of Appeals expounded on this standard in *O'Leary v. Liberty Mutual Insurance Company* by quoting the Restatement (Second) of Judgments, and following that quotation with its own commentary:

The relevant comment in the Restatement provides as follows:

> If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made.

> RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment, at 258 (1982). This Restatement definition does not incorporate the [plaintiff's] notion that an issue is not essential if, under some hypothetical resolution of the dispute, the issue could have been avoided. Rather, the sole focus of the Restatement's analysis is whether a particular issue, *which actually was decided,* was critical to the judgment or merely dicta.

923 F.2d 1062, 1067 (3d Cir. 1991) (emphasis in original).

■ The arbitrator's decision, although brief, leaves no doubt that all the issues put before him were actually and necessarily decided. Pourzal

initiated the arbitration claims, which explicitly implicated the defendants' alleged tortious conduct on August 9, 1999. In resolving those claims, the arbitrator stated in his final judgment that "all claims not expressly granted are herein denied," and that his ruling was "in settlement of all claims presented to this arbitration." (Defs.' Mot., Ex. F (emphasis added).) The arbitrator could not have reached such a sweeping decision without considering the critical issue of the conduct of the agents alleged to have participated in the tortious conduct for which Pourzal sought relief. Pourzal cannot now argue that such consideration of a critical issue was non-essential to resolving "all claims" before the arbitrator. *Cf. Witkowski,* 173 F.3d at 203 n.15 (noting nexus between the identity-of-the-issues and essential-to-the-judgment requirements because "the identical issue must have been necessary to final judgment on the merits."). As such, the fifth and final requirement for collateral estoppel is satisfied.

## IV. CONCLUSION

Viewing the record in the light most favorable to Pourzal for purposes of the defendants' motion for partial summary judgment, the Court finds that Pourzal seeks to re-assert substantially the same issues in this litigation that were resolved in the prior arbitration proceeding. Although Pourzal has attempted to raise an issue of material fact as to what the arbitrator decided, the Court is not required "to turn a blind eye to the weight of the evidence" or accept claims based on "metaphysical doubt." *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992). Applying this standard, the weight of the evidence establishes that the arbitration proceedings afforded Pourzal a full and fair opportunity to litigate the issues surrounding the defendants' allegedly tortious acts of August 9, 1999, and that the arbitrator reached these issues in his decision. As such, Pourzal is collaterally estopped from re-litigating those issues here, as there is no material fact in dispute and the defendants are entitled to judgment as a matter of law. Accordingly, the defendants' motion for partial summary judgment will be granted. An appropriate order follows.